**HOLDITCH**

v.

**STANDARD ACC. INS. CO.**

No. 14641.

United States Court of Appeals
Fifth Circuit.

Dec. 21, 1953.

Russell M. Baker, Robert P. Woodruff, Caldwell Baker & Jordan, Dallas, Tex., for appellant.

W. Richard Bernays, Lucian Touchstone, Touchstone & Bernays, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Brought under the Texas Workmen's Compensation Statutes, Vernon's Ann. Civ.St. art. 8306 et seq., upon the claim that plaintiff had sustained an accidental injury in the course of her employment, the suit was to set aside an award of the Industrial Accident Board denying plaintiff's claim for disability benefits.

Defendant denying generally the allegations in plaintiff's complaint and specially denying that she had sustained any accidental injuries entitling her to compensation, the cause was tried to a jury on the issues joined.

After plaintiff had presented her evidence, which showed that she had received her injuries during her lunch time and while off the employer's premises, and had rested, defendant moved for a directed verdict on the ground that her evidence not only did not show that her accident and alleged injuries arose out of or were sustained in the course of her employment, but it affirmatively showed, on the contrary, that the alleged accident occurred at a time and on an occasion when she was on a mission of her own.

The district judge, correctly summing up [1] plaintiff's testimony and briefly stating [2] his reasons for doing so, directed a verdict and entered judgment for defendant.

Appealing from the judgment, plaintiff is here insisting: that there was evidence to take the case to the jury; that the verdict was wrongly directed; and that the judgment must be reversed.

In support of this view, appellant relies, as taking the case out of the established Texas rule,[3] that injuries incurred off the employer's premises while the employee is off duty at his lunch hour or is going to or returning therefrom or to and from his home are not compensable, on the evidence set out in the margin [4]

1. "* * * The testimony here shows unequivocally that this lady went to work at 6:00 o'clock in the morning, and was off at 10:00 for lunch. She left the premises of her employer and went to the Atlantic & Pacific Tea Company Store to purchase some chewing gum, and as she entered the store for that purpose, or left the store, after having accomplished that purpose, she fell, on the premises of the *Atlantic & Pacific Tea Company*, by reason of having slipped on a piece of lettuce. * * *"

2. "The workmen's compensation law is the basis for and the itemizing of the contractual relations under which and for which the employer's insurance company insured the employees, and that particular statute requires and defines the term 'injury', or 'personal injury', shall be construed to mean damage or harm to the physical structure of the body, and therefrom. To which must be added the phrase, 'while in the regular course of employment'.

   "I find nothing at all in this evidence to indicate any service whatever for her employer. She was not in the course of her employment. She went for the convenience of buying some chewing gum, on her regular lunch hour, with which her employer had nothing to do whatever.

   "If she has any case at all, and I am not trying, nor do I mean to say anything about the matter, but, if she has any case at all, it is against the Atlantic & Pacific Tea Company, for not having a safe place for invitees to come and go, as they came and went to and from that store.

   "I, therefore, sustain the motion, Gentlemen, and direct the juror on the corner to return and sign the verdict, for the defendant."

3. 45 Tex.Jur. 531; Banks v. Commercial Standard Ins. Co., Tex.Civ.App., 78 S. W.2d 660; McKim v. Commercial Standard Ins. Co., Tex.Civ.App., 179 S.W.2d 357; London Guaranty & Accident Co. v. Smith, Tex.Civ.App., 290 S.W. 774; Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192; American Motorists Ins. Co. v. Steel, Tex.Civ.App., 229 S.W.2d 386.

4. As material here, this is:
   Under her contract of employment, she went to work at six o'clock in the morning and got off at two-thirty o'clock in the afternoon. She had a lunch period from ten to ten-thirty and occasionally but not often had a break during the day.

---

and on numerous Texas cases and others cited by her each decided upon its own facts.

Appellee, pointing out that none of the cited Texas cases question the correctness of, or purport at all to depart from, the established Texas rule, and that the cases cited from other jurisdictions to the contrary of the Texas rule are without bearing in this court which must follow that rule, points to and relies upon, as conclusive, plaintiff's evidence [5]

The employer instructed the workers to bring their lunch and an office was provided in the building so that they would have a place to eat. No food or eating place was furnished by the employer, and the nearest eating place was a block and a half from the bakery. Immediately next door to the bakery was an A & P Grocery Store, and there was a custom and practice for one or two employees each day to go to the grocery store and make purchases to supplement the lunches which the employees brought from their homes. The employees took turns in going to the grocery store and those whose turn it was to go, made purchases for themselves and for their fellow workers. The supervisors at the bakery knew of this practice and made no objection to it.

On the date of plaintiff's accident, it was her turn to go to the grocery and it was decided among the workers that on that day she would buy chewing gum. There was a practice among the workers of chewing gum on the job. The chewing gum helped relax the workers in their fast work and kept them from getting thirsty and from eating the pecans and fruit that went into the cakes. Plaintiff punched out at ten o'clock, washed up in the restroom, and then walked next door into the A & P store where she purchased three packages of gum for herself and her fellow employees. She started out of the store on her way back to the job when she slipped on a piece of lettuce and fell, striking her head on a box and her left side on the floor.

5. "Q. Where did you wash up on the day in question? A. In the restroom.

"Q. Then you punched out? A. I punched out before I washed up.

"Q. You punched out at 10:00 o'clock? A. Yes, sir.

"Q. Then you went over to the AP store, is that correct? A. Well, we was in the restroom, and we was deciding on what we wanted to buy, and there was a lady started with me, and some of them had some letters they wanted to mail, and we gathered up the mail, and this other lady went up to the post office while I went to purchase the gum.

"Q. Were those letters of some of the employees? A. Yes, sir.

"Q. You went to the AP to buy some gum? A. It was my turn to do that.

"Q. How many packages of gum did you buy? A. Three.

"Q. How much did they cost? A. Ten cents.

"Q. Did you use your own money? A. Yes.

"Q. Who was it decided you should buy the gum? A. The ladies we worked with back there, they were in the habit of chewing gum, to keep from eating these fattening pecans.

"Q. In other words, it was the employees you worked with that decided you should buy gum that day? A. Yes, sir.

* * * * * * *

"Q. If you had wanted to, on that day in question, when you got hurt, you could have gone to any one of these eating places, or any place else, so long as you got back to your employer's bakery by 10:30? A. I couldn't have gotten back.

"Q. I am not asking you that. You could have gone there, as long as you got back in time, as long as you got back at 10:30, you had permission to go to any eating place you wanted to, didn't you? A. Yes, sir.

"Q. How far was the post office, or the nearest mail box? A. Across the street.

"Q. And the employee who went across to mail the letters could do that without getting permission? A. Yes, sir.

"Q. You didn't have to get any permission from anybody connected with Knox Street Bakery to go next door to AP's Store? A. No, sir.

"Q. You were not being paid on your lunch period were you? A. No, sir.

"Q. This idea of one employee, or several employees, going next door to purchase gum or candy bars, and things of that sort, was purely for the accommodation of the other employees? A. Yes, sir.

* * * * * * *

"Q. Now, you were not on any mission, or purchasing anything for the Knox Street Bakery, when you went to the AP Store, were you? A. No, sir.

"Q. And it was at the AP store that you got hurt? A. Yes, sir."

724

and the Texas cases establishing and applying the Texas rule. So pointing, it insists that what appellant is trying to do here is to prevail upon this court to either reject, or depart sufficiently from, that rule to find a case here where in fact and in law none exists.

We agree that this is so. Without attempting, therefore, to state the facts further than they have already been stated in the notes supra, or to discuss and analyze the many authorities cited, we will content ourselves with saying that, under settled Texas law, the plaintiff's evidence did not make out a case of an injury arising out of, or received in, the course of her employment and that the district judge was right in instructing a verdict for defendant.

The judgment is affirmed.