**Motions for Rehearing and En Banc Reconsideration Overruled; Opinion of September 6, 2012 Withdrawn; Reversed and Remanded; and Substitute Opinion filed October 11, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00131-CV

---

**TEXAS MUTUAL INSURANCE COMPANY, Appellant**

**V.**

**RONALD JERROLS, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-41876**

---

---

### NO. 14-11-00496-CV

---

**CEDRIC WILLIAMS AND JAIME LUNA, Appellants**

**V.**

**TEXAS MUTUAL INSURANCE COMPANY, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-41875**

---

# S U B S T I T U T E   O P I N I O N

We overrule the motions for rehearing, withdraw our opinion dated September 6, 2012, and issue the following substitute opinion.

Ronald Jerrols, Cedric Williams, and Jaime Luna sustained serious injuries in a traffic accident while they were returning to work from a restaurant after eating lunch. This appeal focuses on whether Jerrols, Williams, and Luna (also referred to collectively as the "claimants") were in the course and scope of their employment under the Texas Labor Code when these injuries occurred.

Material fact issues preclude an as-a-matter-of-law determination that the claimants were or were not in the course and scope of their employment when these injuries occurred. Accordingly, we reverse the summary judgments granted below and remand for further proceedings.

## BACKGROUND

## I.      The Tank Cleaning Job in Jal, New Mexico

Jerrols, Williams, and Luna lived in the Houston area and worked for Midwestern Services, Inc. as part of a crew cleaning above-ground oil storage tanks. Midwestern provides cleaning services for crude oil tank farms in thirteen states.

In fall 2008, Midwestern sent Jerrols, Williams, and Luna to work at a tank farm outside of Jal, New Mexico near the Texas-New Mexico border. The job was anticipated to last between three and six months. The claimants were expected to work approximately 50 days on the job; come home to Houston for four days or so; and then return to the job.

Williams and Luna had been in Jal for at least six weeks when the accident occurred. Jerrols joined the crew in Jal three days before the accident.

Midwestern provided a Midwestern-owned crew cab truck driven by a Midwestern employee to transport its crew members. Midwestern required the claimants to use this

mode of transportation while they were working in Jal. The claimants were not permitted to bring personal vehicles to New Mexico. They were permitted to use the company truck in the evenings and on Sundays for personal errands.

At the time of the accident, the claimants were staying at a motel located in Kermit, Texas about 20 miles from the tank farm outside Jal. Each work day, the cleaning crew rode together in the Midwestern crew cab truck from the motel to the tank farm and back again. The claimants were paid on an hourly basis for 10 hours each day Monday through Saturday with Sundays off. While they were away from home, they received a $25 per diem each day including Sundays for meals and personal items.

The claimants had one hour for lunch. They bought and ate lunch each day Monday through Saturday at the Town & Country, a retail location about two miles from the tank farm that included a gas station, convenience store, and restaurant.[1] In addition to buying and eating lunch, the claimants participated in other activities over the lunch hour including making personal calls; engaging in personal and work-related discussions; and buying snacks and drinks for personal consumption. They rode together during the one-hour lunch break from the tank farm to the Town & Country and back again in the Midwestern crew cab truck driven by a Midwestern employee.

The accident occurred on October 22, 2008, while the claimants were returning from the Town & Country to the tank farm after eating lunch; as required, they were riding together in the Midwestern truck with a fellow employee at the wheel. The claimants were injured when the Midwestern truck left the Town & Country, pulled onto the highway, and collided with an 18-wheel tractor-trailer.

## II. Legal Proceedings

Following a contested case hearing, a hearing officer for the Division of Workers' Compensation determined that the claimants were on a "special mission" at the time of

---

[1] Texas Mutual contends another restaurant was located nearby. The record is not clear on this point.

the accident and were injured in the course and scope of their employment with Midwestern. An appeals panel affirmed the hearing officer's decision. Midwestern's workers' compensation insurer, Texas Mutual Insurance Company, filed multiple suits in district court seeking judicial review of the administrative compensability determination.

One suit addressing Williams's claim was filed as Cause No. 2009-41875 in the 333rd District Court of Harris County; that court later consolidated a separate suit addressing Luna's claim with Williams's claim under Cause No. 2009-41875. Another suit addressing Jerrols's claim was filed as Cause No. 2009-41876 in the 129th District Court. In both Cause Nos. 2009-41875 and 2009-41876, Texas Mutual and the claimants filed cross-motions seeking traditional summary judgment with respect to the compensability determination.

In Cause No. 2009-41875, the 333rd District Court determined as a matter of law that Williams and Luna were not in the course and scope of employment at the time of the accident and their injuries were not compensable; the court granted summary judgment in favor of Texas Mutual and against Williams and Luna. In Cause No. 2009-41876, the 129th District Court determined as a matter of law that Jerrols was in the course and scope of employment at the time of the accident and his injuries were compensable; the court granted summary judgment in favor of Jerrols and against Texas Mutual.

Texas Mutual filed a notice of appeal in Cause No. 2009-41876, which was docketed in the Fourteenth Court of Appeals. Williams and Luna subsequently filed a notice of appeal in Cause No. 2009-41875, which was docketed in the First Court of Appeals. We consolidated the subsequent appeal with the first-filed appeal in this court.

## STANDARD OF REVIEW

We review the summary judgment rulings below *de novo*, applying the same standard that the trial courts applied in the first instance. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment under Rule 166a(c)'s

4

traditional standard is appropriate when (1) there are no genuine issues of material fact, and (2) the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We indulge every reasonable inference in favor of the non-movant and resolve any doubts in the non-movant's favor. *Nixon*, 690 S.W.2d at 548-49.

The Labor Code provides for modified *de novo* review in the trial court of an administrative decision on compensability. Tex. Lab. Code Ann. §§ 410.301-.308 (Vernon 2006); *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 528 (Tex. 2000). The factfinder is informed of the underlying determination, but is not required to accord that decision any particular weight. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 528 (Tex. 1995). The party appealing the underlying compensability determination bears the burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. § 410.303.

## ANALYSIS

We begin with a detailed discussion of the key statutory provisions at issue in this case. This discussion will put the parties' arguments in context.

### I.      Standards Governing Course and Scope of Employment

An injury is compensable when it "arises out of and in the course and scope of employment for which compensation is payable" under the Workers' Compensation Act. Tex. Lab. Code Ann. § 401.011(10) (Vernon Supp. 2012).

Section 401.011(12) defines "[c]ourse and scope of employment" as "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." *Id*. at § 401.011(12). This definition encompasses "an activity conducted on the premises of the employer or at other locations." *Id*.

Origination and furtherance are separate components. Both must be satisfied to

5

bring an activity within the "course and scope of employment." *See Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 243-44 & n.18 (Tex. 2010).

The statute's underlying policy goal is to allocate "to the employer and insurance carrier the risks inherent in an employee's job while leaving to the employee risks that are 'shared by society as a whole and do not arise as a result of the work of the employer.'" *Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 730 (Tex. App.—Austin 2011, pet. denied) (quoting *Evans v. Ill. Emp'rs Ins. of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990)). The Workers' Compensation Act "should be given a liberal construction to effect its purpose of compensating injured workers and their dependents." *Id*. (citing *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 959, 961-62 (Tex. 1999)).

Even when both the origination and furtherance requirements are satisfied, subsections (A) and (B) of section 401.001(12) nonetheless exclude two distinct circumstances from the "course and scope of employment." *Id*. at § 401.011(12)(A), (B).

Under subsection (A)'s exclusion, "course and scope of employment" does not include "transportation to and from the place of employment" unless one of three exceptions to the exclusion applies.

Transportation to and from the place of employment is not excluded under subsection (A) if

- "the transportation is furnished as part of the contract of employment or is paid for by the employer;"

- "the means of the transportation are under the control of the employer;" or

- "the employee is directed in the employee's employment to proceed from one place to another place . . . ."

*Id*. at § 401.011(12)(A)(i), (ii), (iii). The exception under section 401.011(12)(A)(iii) pertaining to circumstances in which "the employee is directed in the employee's employment to proceed from one place to another place" is referred to in case law as

6

"special mission" travel. *See Evans v. Ill. Emp'rs Ins. of Wausau*, 790 S.W.2d 302, 304 (Tex. 1990); *Zurich Am. Ins. Co.*, 339 S.W.3d at 730. These three exceptions are disjunctive; "if any one is met, the exclusion does not apply, and travel to and from work is not excluded from the course and scope of employment." *Leordeanu*, 330 S.W.3d at 244.

This language in subsection (A) codifies the "coming and going" rule and its exceptions, which developed to address an employee's travel between home and work. *Id.* at 242 (citing *Janak v. Tex. Emp'rs' Ins. Ass'n*, 381 S.W.2d 176, 178 (Tex. 1964), and *Am. Gen. Ins. Co. v. Coleman*, 157 Tex. 377, 303 S.W.2d 370, 374 (1957)). While recognizing that employee travel to and from work furthers the employer's affairs by making employment possible, cases reasoned that such travel generally does not originate in the employer's business because "'[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers.'" *Leordeanu*, 330 S.W.3d at 242 (quoting *Evans*, 790 S.W.2d at 305); *see also Zurich Am. Ins. Co.*, 339 S.W.3d at 728.

The Texas Supreme Court has emphasized that "[t]he 'coming and going' rule developed . . . specifically for travel between home and work." *Leordeanu*, 330 S.W.3d at 245 (citing *Evans*, 790 S.W.2d at 304-05). The supreme court has construed subsection (A)'s exclusion in a manner "consistent with the historical development" of the "coming and going" rule's focus on employee travel between home and work, and has refrained from "expand[ing] the 'coming and going' rule beyond its traditional boundaries." *Id.* at 248-49 & n.36.

Subsection (B)'s exclusion codifies the separate "dual purpose" rule that developed to address "an employee traveling for both business and personal purposes." *Leordeanu*, 330 S.W.3d at 243.

Under the "dual purpose" rule, travel encompassing both business and personal purposes "is in the course and scope of employment only if the business purpose is both a necessary and a sufficient cause for the travel." *Id.* "The 'dual purpose' rule was devised

7

for the distinct situation in which the employee is traveling between work and a place other than home." *Id*. at 244-45; *see also id.* at 248 (The "dual purpose" rule was devised for situations in which "the employee was not headed home but to another destination, both on business and for pleasure.").

Like subsection (A)'s "coming and going" rule, subsection (B)'s "dual purpose" rule also codifies exceptions to the exclusion. "Dual purpose" travel is not excluded under subsection (B) if two circumstances exist. The first circumstance is that "travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel." Tex. Lab. Code Ann. § 401.011(12)(B)(i). The second circumstance is that "the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel." *Id*. at § 401.011(12)(B)(ii). Both circumstances must exist in order for the exception to apply. *Leordeanu*, 330 S.W.3d 244.

As the supreme court observed in *Leordeanu*, subsection (B)'s wording "is somewhat convoluted." *Id*. at 244. "More simply put, it does not exclude work-required travel from the course and scope of employment merely because the travel also furthers the employee's personal interests that would not, alone, have caused him to make the trip." *Id*.

The supreme court also analyzed the relationship between subsections (A) and (B) in *Leordeanu*. The court did so as it addressed whether injuries sustained in a car accident that occurred when the employee was traveling from one workplace to another while on the way home fell within the course and scope of employment under section 401.011(12). *See id.* at 240. The court concluded that such travel was within the employee's course and scope of employment. *Id*. at 248-49.

In analyzing the relationship between subsections (A) and (B) in *Leordeanu*, the supreme court observed that section 401.011(12) was rewritten in 1989 as part of a larger legislative overhaul of the Workers' Compensation Act. *Id.* at 244. This 1989 rewrite of section 401.011(12) listed subsections (A) and (B) as "two disjunctive exclusions" and

"can be read to suggest that travel is excluded from the course and scope of employment if either one applies." *Id*.

The supreme court rejected such a reading in *Leordeanu*. "The difficulty with this construction is that travel between work and home is just one kind of dual purpose travel benefitting both employer and employee." *Id*. "If both subsections (A) and (B) apply in every situation, (A) becomes merely a specialized application of (B)." *Id*. The court further noted, "If the 'dual purpose' rule also applied to travel to and from work, homeward-bound travel could never be in the course and scope of employment" because such travel never could satisfy subsection (B)(ii)'s exception to the exclusion. *Id*. at 245. "[A]ny employee intending to take care of business on the way home, if the business purpose evaporates, will still go home." *Id*. "Applying subsection (B)(ii) to employees coming home from work limits subsection (A) to a 'going' rule." *Id*.

This concern prompted the supreme court to reject "application of the 'dual purpose' rule to 'coming and going' travel." *Id*. at 248-49. It rejected this approach in light of the "coming and going" rule's historic focus on "travel between work and home," and the "dual purpose" rule's historic focus on travel "between work and a place other than home." *Id*. at 244-45.

The supreme court held in *Leordeanu* that "only subsection (A) applies to travel to and from the place of employment, and that subsection (B) applies to other dual-purpose travel." *Id*. at 248. The "dual purpose" rule continues to apply "in the situations for which it was devised . . . where the employee was not headed home but to another destination, both on business and for pleasure." *Id*. *See also Zurich Am. Ins. Co.*, 339 S.W.3d at 729 (*Leordeanu* held that "subparagraphs (A) and (B) are mutually exclusive and thus any travel between work and home, even if it is also for a dual purpose, must be analyzed exclusively under paragraph (A)") (citing *Leordeanu*, 330 S.W.3d at 248-49).

Like the Austin Court of Appeals, we too note that satisfying exceptions to the exclusions under subsections (A) or (B) does not automatically establish that the travel at issue falls within the course and scope of employment. *See Zurich Am. Ins. Co.*, 339

S.W.3d at 729. Satisfying these exceptions establishes only that these exclusions do not apply. *Id.* Section 401.011(12)'s separate origination and furtherance requirements still must be met to establish that an activity falls within the course and scope of employment. *Id.*

Finally, two additional concepts potentially bear on the arguments for and against coverage in connection with the accident at issue in this case.

The first concept is the "personal comfort" doctrine, under which "[a]n employee in the course of his employment may perform acts of a personal nature that the person might reasonably do for his health and comfort, such as quenching thirst or relieving hunger . . . ." *Yeldell v. Holiday Hills Ret. & Nursing Ctr.*, 701 S.W.2d 243, 245 (Tex. 1985). "[S]uch acts are considered incidental to the employee's service and the injuries sustained while doing so arise in the course and scope of his employment and are thus compensable." *Id.*; *see also Lujan v. Houston Gen. Ins. Co.*, 756 S.W.2d 295, 298 (Tex. 1988); *Emp'rs' Cas. Co. v. Bratcher,* 823 S.W.2d 719, 721 (Tex. App.—El Paso 1992, writ denied); *Tex. Emp'rs' Ins. Ass'n. v. Prasek*, 569 S.W.2d 545, 548 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *Weaver v. Standard Fire Ins. Co.*, 567 S.W.2d 34, 35 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.).[2]

The second concept is "continuous coverage." *See, e.g., Zurich Am. Ins Co.*, 339 S.W.3d at 731 (citing *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 293-94 (Tex. 1965), and *Aetna Cas. & Sur. Co. v. Orgon*, 721 S.W.2d 572, 574-75 (Tex. App.—Austin 1986, writ ref'd n.r.e.)). "Most courts which have considered the question regard an employee whose work entails travel away from the employer's premises as being in the course and scope of his employment when the injury has its origin in a risk created by the necessity of sleeping or eating away from home, except when a distinct departure on a personal

---

[2] Courts have applied the personal comfort doctrine in determining that compensable injuries occurred when the employee was injured while making a personal call during working hours while on duty at her nursing station, *see Yeldell*, 701 S.W.2d at 245; eating in an employer-provided trailer located on a drilling site, *see Prasek* 569 S.W.2d at 548; and preparing to take a shower at home after being doused with paint and gasoline at the worksite, *see Lujan*, 756 S.W.2d at 298-99.

errand is shown." *Shelton*, 389 S.W.2d at 293; *see also Zurich Am. Ins. Co.*, 339 S.W.3d at 731-32.[3]

With this backdrop, we now turn to the parties' arguments.

## II. Application of Standards

Texas Mutual argues that Jerrols, Williams and Luna were not in the course and scope of their employment because they performed personal tasks during the lunch hour and were en route back from lunch when the accident occurred. According to Texas Mutual, the claimants were performing a personal errand that was not controlled by the employer; did not originate in the employer's work; did not further the employer's affairs or business; and is excluded from coverage under the "dual purpose" rule even if origination and furtherance can be established.

Jerrols, Williams, and Luna contend that they were in the course and scope of employment because the accident occurred while they were present in another state for work without independent means of travel; they were required to use employer-provided transportation throughout their time in New Mexico; they were being paid during the lunch hour; and they were under employer control at the time of the accident.

The court's task is to determine how these contentions mesh with the record and the governing legal standards. We undertake this task in two steps. First, we examine the origination and furtherance requirements. Second, we address the exclusions for "coming and going" travel and "dual purpose" travel.

---

[3] Texas Mutual characterizes the continuous coverage doctrine in its brief as a "specialized application of the special mission exception." We reject this characterization because the special mission exception reflected in section 401.011(12)(A)(iii) pertains to "coming and going" travel between work and home. *See Leordeanu*, 330 S.W.3d at 245; *Evans*, 790 S.W.2d at 304-05. The continuous coverage doctrine is not limited to "coming and going" travel. *See Shelton*, 389 S.W.2d at 292-93 (while observing that "this is not a 'going to or returning from' case," the supreme court nonetheless applied the continuous coverage doctrine to a truck driver who was struck by a car while crossing the street to walk from his motel to a restaurant during an overnight layover in the midst of work-related travel between two of his employer's facilities).

11

### A. Course and Scope Based on Travel During an Off-Site Meal Break

The parties' disagreement about how to analyze section 401.011(12)'s origination and furtherance requirements stems in part from their emphasis on different aspects of the claimants' lunch break in relation to the "course and scope" inquiry.

Texas Mutual argues that the claimants were returning to the tank farm after having eaten lunch at a restaurant of their own choosing. According to Texas Mutual, eating lunch does not originate in or further the employer's business because this activity always is a "personal task[];" reflects an "interest shared by 'society as a whole' rather than any particular employer;" and constitutes a "personal matter." Jerrols, Williams, and Luna counter that "injuries over the course of lunch, when the employee is on the clock or under circumstances controlled by the employer, are within the course and scope [of] . . . employment."

Case law does not provide a bright-line rule for determining the compensability of injuries occurring during travel in connection with meal breaks.

In part, the absence of a bright-line rule reflects the unavoidably fact-specific nature of the inquiry into course and scope. This absence also is attributable to contradictory pronouncements appearing in the case law. *Compare Berry v. Gregg Indus. Servs., Inc.*, 907 S.W.2d 4, 5 (Tex. App.—Tyler 1994, writ denied) ("The overwhelming weight of Texas authority holds that an injury received during the lunch period is compensable as a matter of law."), *with Holditch v. Standard Accident Ins. Co.*, 208 F.2d 721, 722 (5th Cir. 1953) ("[E]stablished Texas rule" holds that "injuries incurred off the employer's premises while the employee is off duty at his lunch hour [and] is going to or returning therefrom . . . are not compensable . . . .").

Similarly, cases with parallel facts involving injuries arising from travel away from work premises during meal breaks reach varying conclusions that are difficult to reconcile. *Compare Mapp v. Md. Cas. Co.*, 730 S.W.2d 658 (Tex. 1987) (per curiam) (fact issue existed as to whether employee was in the course and scope of her

12

employment when she was kidnapped while getting into her personal vehicle in restaurant parking lot to drive back to her office after lunch break), *with Smith v. Tex. Emp'rs' Ins. Ass'n*, 129 Tex. 573, 105 S.W.2d 192 (1937) (employee was not in the course and scope of employment when he was killed in a car accident while driving personal vehicle back to his job at funeral home to continue working after dinner break at home); *see also Holditch*, 208 F.2d at 722 (employee was not in the course and scope of employment when she was injured by slip and fall during lunch hour while leaving grocery store, which was adjacent to her workplace, to return to work); *Berry*, 907 S.W.2d at 5 (employee was in the course and scope of employment when he was injured in collision while riding in employer-owned truck and returning from lunch at mine dining facility to employer's equipment yard at the mine).

Imprecise references to the personal comfort doctrine foster additional uncertainty when analyzing injuries occurring during travel for meals away from the workplace.

For example, *Berry*'s broad pronouncement that "an injury received during the lunch period is compensable as a matter of law" rests in part on the Texas Supreme Court's decision in *Yeldell*. *See Berry*, 907 S.W.2d at 5 (citing *Yeldell*, 701 S.W.2d at 245). But *Yeldell* involved neither an off-site injury nor a meal break; instead, it involved a nurse who overturned a coffee urn at her nursing station while hanging up the telephone after talking to her daughter. *Yeldell*, 701 S.W.2d at 244-45. The "personal comfort" activity at issue in *Yeldell* was "making a personal telephone call during working hours." *Id*. at 245.[4] *See also Bratcher*, 823 S.W.2d at 721 ("'Employees who, within the time and

---

[4] *Berry* also cites *Texas Employer's Insurance Association v. Prasek*, 569 S.W.2d 545 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.), and *Travelers Insurance Company v. McAllister*, 345 S.W.2d 355 (Tex. Civ. App.—Amarillo 1961, writ ref'd n.r.e.). Both cases involved injuries that occurred at or adjacent to the work site during a meal break. *See Prasek*, 569 S.W.2d at 548 (employee was within course and scope of employment when he choked on a piece of steak while eating in trailer at oil field drilling site; employer provided trailer for employees' use while they were required to be at well site during crucial drilling stages); *McAllister*, 345 S.W.2d at 357 (employee was within course and scope of employment when he fell to his death from top of grain elevator during lunch hour because "he fell from a place he was authorized to be" and "[t]he employer had no objection to employees eating their lunch on top of the elevator;" court observed that "the master and servant relationship in Workmen's Compensation cases is not suspended during the noon hour where the master expressly or by implication

space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless . . . the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.'") (quoting 1A Larson's Workmen's Compensation Law §21.00 (1990)).

There is room to question whether the personal comfort doctrine is the correct framework for analyzing the compensability of injuries occurring in connection with travel to or from a meal at a location miles from the work premises. Driving to a location miles away from the work site during a meal break at least raises the prospect of a "'departure'" significant enough to signal "'an intent to abandon the job temporarily.'" *See Bratcher*, 823 S.W.2d at 721 (quoting 1A Larson's Workmen's Compensation Law §21.00 (1990)); *see also Wausau Underwriters Ins. Co. v. Potter*, 807 S.W.2d 419, 422-23 (Tex. App.—Beaumont 1991, writ denied) (Reversing judgment based in part on erroneous inclusion of jury instruction on personal comfort doctrine from *Yeldell* in case in which employee was injured in traffic accident while riding in company vehicle to have lunch at a restaurant away from the job site; "[t]he *Yeldell* case had nothing whatsoever to do with an injury sustained while travelling on the public highway or streets."). For this reason, we do not rely on the personal comfort doctrine to resolve the coverage dispute at issue here.

### 1. Furtherance

Because analysis of section 401.011(12)'s furtherance requirement is straightforward on this record, we address it first.

---

invites his employees to remain on the premises in the vicinity of the work"). These circumstances distinguish *Prasek* and *McAllister* from a situation in which an injury occurs while the employee is driving between a work site and an off-premises dining location miles away. Other cases involving lunchtime injuries on the employer's premises are distinguishable for the same reason. *See, e.g., Nat'l Sur. Corp. v. Bellah*, 245 F.2d 936 (5th Cir. 1957) (employee injured during lunch at dining location set up by employer on the employer's premises); *Tex. Emp'rs' Ins. Ass'n v. Davidson*, 295 S.W.2d 482 (Tex. App.—Fort Worth 1956, writ ref'd n.r.e.) (employee injured after eating lunch at work station by slipping on materials dropped by co-worker).

Texas Mutual asserts that "no authority supports the notion that performing basic, life-sustaining functions like eating, breathing, and sleeping 'furthers' the affairs of the employer for purposes of the statute." Texas Mutual overreaches. *See Shelton*, 389 S.W.2d at 292-93.

*Shelton* analyzed the compensability of injuries sustained by a truck driver during an overnight layover in Dallas en route from one of his employer's facilities in Abilene, Texas to another of his employer's facilities in Wichita, Kansas. *Id*. at 291-92. The distance and driving time involved made it "necessary for [Shelton] . . . to sleep and eat en route." *Id*. The injuries occurred when a car struck the driver while he crossed the street to walk from his motel to a restaurant for dinner during the Dallas layover. *Id*. at 291. The trial court granted summary judgment on grounds that the injury did not occur within the course and scope of the truck driver's employment, and the court of appeals affirmed. *Id*. The supreme court reversed and held that the injury occurred in the course and scope of the truck driver's employment. *Id*. at 293-94. The supreme court stated: "Petitioner was furthering the affairs of his employer by going to Dallas and also by spending the night and eating there so as to be ready to continue his trip the following day." *Id*. at 291.

Given the record in this case, addressing the furtherance inquiry does not require us to decide whether and under what circumstances an employee's act of eating a meal furthers the employer's affairs. The key inquiry here does not focus solely on eating. The key inquiry is whether the claimants' travel to and from the Town & Country in the course of their one-hour lunch break — during which they ate lunch and performed other tasks — furthered the employer's affairs. The answer to this question requires consideration of multiple activities during the claimants' lunch break. Some of those lunchtime activities potentially furthered the employer's affairs, and some potentially did not.

It suffices for purposes of this appeal to note testimony that Jerrols, Williams, and Luna discussed work-related topics during their lunch break such as safety, task

15

coordination, and scheduling. Although it downplays the amount of time devoted to such topics, Texas Mutual identifies no evidence contradicting testimony that work-related topics were discussed during the lunch break. This circumstance demonstrates that the furtherance requirement is satisfied here regardless of whether the act of eating lunch itself (or any other activities undertaken by the claimants during lunch) also furthered the employer's affairs.

## 2. Origination

Origination presents a closer question. On appeal, the parties dispute certain aspects of the claimants' lunch break on the day of the accident.

- The claimants contend Midwestern required them to eat lunch and paid them for doing so. Texas Mutual contends they were not required to eat lunch and suggests in its briefing that they were not paid for doing so.

- The claimants contend Midwestern required them to eat lunch at a location away from the tank farm due to the presence of hazardous substances in the tanks. Texas Mutual contends the claimants were allowed to bring food with them and eat in the truck or at another location at the tank farm that was not in the immediate vicinity of the specific tanks being cleaned.

- The claimants contend their supervisor chose to have the crew eat at the Town & Country. Texas Mutual contends the claimants could exercise their own discretion and choose where to eat.

We conclude that any such disputes are not material to resolution of section 401.011(12)'s origination inquiry. Origination based on travel in connection with the claimants' lunch break is established on this record regardless of whether the claimants were required to eat lunch; were paid for eating lunch; were required to leave the tank farm if they decided to eat lunch; or were free to choose an off-site lunch location in their own discretion.

The claimants were injured in a collision that occurred while they were stationed

16

in New Mexico to work for weeks at a time, living in a motel away from their homes in Houston. Their required mode of transportation while working in New Mexico was a Midwestern-owned crew cab truck driven by a Midwestern employee. They were traveling together in Midwestern's truck during their lunch break at the moment of impact, returning from a restaurant to the work site.

In addressing these circumstances, we agree that "[t]here is no bright-line rule for determining whether employee travel originated in the employer's business." *Zurich Am. Ins. Co.*, 339 S.W.3d at 730. "Rather, each situation is necessarily dependent on the facts." *Id.* "As a general rule, an employee's travel originates in his employer's business if the travel was pursuant to the express or implied requirements of the employment contract." *Id.* (citing *Rose v. Odiorne*, 795 S.W.2d 210, 213-14 (Tex. App.—Austin 1990, writ denied)). "This reflects the underlying policy goal of allocating to the employer and insurance carrier the risks inherent in an employee's job while leaving to the employee risks that are 'shared by society as a whole and do not arise as a result of the work of the employer.'" *Id.* (quoting *Evans*, 790 S.W.2d at 305). "When the employer requires the employee to travel as part of its business — i.e., pursuant to the contract of employment — the risk of traveling stems from that business and properly can be said to arise as a result of the employer's business." *Id.* (citing *Rose*, 795 S.W.2d at 214).

We also agree that Midwestern's ownership of the truck, standing alone, is not dispositive. *See Potter*, 807 S.W.2d at 422 ("The mere furnishing of transportation by an employer does not automatically bring the employee within the protection of the Texas Workers' Compensation Act. . . . If this were not the law in this State, then each and every accident in a company vehicle, including those operated for purely personal reasons, would be compensable under the Texas Workers' Compensation Act.") (citing *Tex. Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963), and *United States Fire Ins. Co. v. Eberstein*, 711 S.W.2d 355, 357 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)); *see also Eberstein*, 711 S.W.2d at 357 ("[T]he mere gratuitous furnishing of

17

transportation by the employer, as an accommodation to the employee and not as an integral part of the contract of employment, does not bring the employee within the protection of the Worker's Compensation Act.") (citing *Bottom*, 365 S.W.2d at 353).

But this case involves more than Midwestern's ownership of the truck standing alone. Jerrols testified at his deposition that Midwestern "had a company driver. We were in a company vehicle everybody had to ride together." Jerrols stated in his affidavit: ". . . I was never free to choose to separate myself from the rest of the crew." Williams testified as follows during his deposition:

> Q.      All right. Were you allowed to stay there at the job during the lunch hour if you didn't feel like going into town?
>
> A.      No, we wasn't.
>
> Q.      Okay. Did you ever ask to do that?
>
> A.      No.

Luna testified as follows during his deposition:

> Q.      Were there any occasions when crew members would decide to just stay out there at the job rather than go into town for lunch?
>
> A.      No.
>
> Q.      All right. So everybody would get in the cab and go to lunch whether they were going to eat their own lunch or eat lunch or whatever.
>
> A.      Yes.

Luna stated in his affidavit: "Crew members were not free to split up and go to different restaurants. Crew members, including me, were not free to come and go during lunch and were required to stay with the crew at all times. . . . I was never free to choose to separate myself from the rest of the crew."

Midwestern's vice president and safety manager, identified at the Division of Workers' Compensation contested case hearing as Tonya Renee Bates, testified that Midwestern's employees were not allowed to bring their own cars to New Mexico; they were required to travel in a crew cab truck provided by Midwestern and driven by a Midwestern employee. Rene Jackson, who also was identified as vice president and

18

safety manager of Midwestern, testified during her deposition: "I mean, they go to the same place for lunch. I mean, it's not like they all go to different places." Counsel asked, "Why not?" Jackson responded, "Because they're in our company vehicle, and they're a team, and they have a set time. And so, if you didn't do it that way, you wouldn't be on task." Jackson also testified: "When they get their lunch, we provide them a company vehicle, fuel, we provide them that for their lunch hour."

This testimony establishes that the claimants' presence in a Midwestern-owned truck driven by a Midwestern employee at the moment of impact stemmed in significant part from the requirements of their employment with Midwestern. *See Zurich Am. Ins. Co.*, 339 S.W.3d at 730. Even if the claimants were not expected to eat lunch, or to eat lunch away from the tank farm, or to eat lunch away from the tank farm at a particular restaurant, they *were* expected to (1) stay together as a "team" to remain "on task" given the time constraints of their lunch break; and (2) ride together in a Midwestern-owned vehicle driven by a Midwestern employee if they ate lunch at a location away from the job site during the work day. They could not use their own vehicles, which Midwestern did not allow in New Mexico.

In deciding how and where to obtain a meal on any given day, the rest of lunch-eating society as a whole does not share the employment-related travel expectations and risks that applied to these claimants while they were working for Midwestern in New Mexico.

Here, as in *Shelton*, the claimants' "circumstances of . . . eating . . . . were dictated to a large degree by contingencies inherent in the work." *Shelton*, 389 S.W.2d at 294. It follows that section 401.011(12)'s origination requirement is satisfied because the claimants were subjected to risks in connection with lunch-related travel that (1) were inherent in their employment; (2) are not shared by society as a whole; and (3) are thus properly allocated to the employer and its insurance carrier. *See Zurich Am. Ins. Co.*, 339 S.W.3d at 730.

This conclusion comports with the continuous coverage doctrine, under which an

19

employee is regarded as "being in the course of his employment when the injury has its origin in a risk created by the necessity of sleeping or eating away from home, except when a distinct departure on a personal errand is shown." *Shelton*, 389 S.W.3d at 293. In analyzing the continuous coverage doctrine, we steer a course between the more extreme positions urged by the parties.

Jerrols, Williams, and Luna contend that the continuous coverage doctrine encompassed all activities and events occurring from the time they left for New Mexico until they returned to Houston weeks later.

For its part, Texas Mutual urges us to restrict the continuous coverage doctrine to injuries arising from employment requiring continuous travel such as that undertaken by the long-haul truck driver in *Shelton*. Texas Mutual urges us to distinguish *Shelton* on this basis and to rely instead on *Rodriguez v. Great American Indemnity Company*, 244 F.2d 484 (5th Cir. 1957).

Rodriguez, a carpenter who lived in San Antonio, stayed in a hotel in Del Rio four and a half days a week while working fixed hours for his employer to build a high school in Del Rio. *Id*. at 485-86. The Fifth Circuit determined that coverage did not exist for Rodriguez's death in an overnight fire at the hotel. *Id*. at 488. The Fifth Circuit discerned a pattern in the case law under which "a workman employed at regular hours and places, when going to and from his work or when asleep or otherwise off duty, is not engaged in the course and scope of his employment and . . . if injured at other times and places than in his working hours and at his work, the injury does not originate in the employment." *Id*. The court said it was "bound to conclude that his injury was not compensable" given that Rodriguez worked "at a fixed place of work, at fixed hours and a fixed hourly rate of pay; [and] that he came to his death not in his working hours or at his work place but away from it, out of hours and when sleeping . . . ." *Id*.

Texas Mutual relies on *Rodriguez* to argue that, despite their extended presence in New Mexico, the continuous coverage doctrine does not apply to Jerrols, Williams, and Luna because they had a fixed place of work at the tank farm to which they returned each

20

day.  According to Texas Mutual, "When a worker has fixed hours and a fixed place of work, injuries are compensable only if sustained in the course and scope of employment under traditional course and scope analysis."

We need not embrace the claimants' expansive characterization of the continuous coverage doctrine — or address circumstances that are not part of this traffic accident, such as use of the employer-provided truck in New Mexico in the evenings after work or on days off — in order to conclude that origination is established in connection with this particular accident during the work day.

And we need not endorse Texas Mutual's narrow focus on the presence of a fixed place of work — or its suggestion that the continuous coverage doctrine applies only to long-haul truck drivers, traveling salespersons, and the like — in order to recognize limits to the doctrine's reach even during an employee's extended work-related absence from home.  The result in *Rodriguez* appears to have had at least as much to do with the after-hours nature of Rodriguez's death as it did with the fixed location of his construction employment.  *Id.*  The existence of a fixed work location may be a factor to consider depending on the particular circumstances of a particular case, but it is not dispositive here.

Whatever the limits of the continuous coverage doctrine during an employee's extended work-related absence from home, the injuries at issue here had their origin in a risk involving the expected use during the work day in New Mexico of a Midwestern-owned vehicle and a Midwestern driver to accomplish lunch travel for which the claimants were expected to remain together.  In significant part, these expectations arose from the means Midwestern provided for the claimants' travel during their extended presence on the job in New Mexico; Midwestern's prohibition of personal vehicles in New Mexico; and Midwestern's expectation that the crew would stay together as a "team" throughout the work day to remain "on task" in light of time constraints.  To borrow a phrase from Texas Mutual's briefing, these were "atypical circumstances created by the business travel."  Under these circumstances, a determination that

origination is satisfied dovetails with the continuous coverage doctrine because the injury at issue "bears the sort of nexus with . . . employment that distinguishes it as one whose risk should be borne by the employer and carrier, as opposed to risks borne by members of society at large." *Zurich Am. Ins. Co.*, 339 S.W.3d at 732.

Having determined that section 401.011(12)'s furtherance and origination requirements are established as a matter of law on this record, we next consider whether coverage nonetheless is foreclosed under the express exclusions for "coming and going" travel and "dual purpose" travel.

## B. Exclusions From Course and Scope

### 1. "Coming and going" rule

Jerrols, Williams, and Luna invoke exceptions to the "coming and going" rule codified in section 401.011(12)(A) to argue that their injuries fall within the course and scope of employment. In particular, they rely upon subsection (A)(iii)'s special mission exception to the exclusion for "coming and going" travel. They also point to subsection (A)(i), which addresses whether "the transportation is furnished as a part of the contract of employment or is paid for by the employer," and subsection (A)(ii), which addresses whether "the means of the transportation are under the control of the employer."

We reiterate that satisfying exceptions to the exclusions under subsections (A) or (B) does not automatically establish that the travel at issue falls within the course and scope of employment. *See Zurich Am. Ins. Co.*, 339 S.W.3d at 729. In any event, we do not decide the applicability of exceptions to section 401.011(12)(A)'s exclusion for "coming and going" travel between work and home because this is not a "coming and going" case. *See Leordeanu*, 330 S.W.3d at 242; *see also id.* at 245, 248-49. Rather, this is a "dual purpose" case involving travel between work and a place other than home. *See id.* at 244-45.

The supreme court has treated the "coming and going" rule and the "dual purpose" rule as mutually exclusive concepts, and has held that it is error to apply section

401.011(12)(B)'s "dual purpose" rule to "coming and going" travel between work and home. *Id.* at 248-49; *see also Zurich Am. Ins. Co.*, 339 S.W.3d at 729. Following this logic, we likewise refrain from applying section 401.011(12)(A)'s "coming and going" rule to "dual purpose" travel between work and a place other than home. *See Leordeanu*, 330 S.W.3d at 248-49.

## 2. "Dual purpose" rule

Texas Mutual contends that section 401.011(12)(B)'s "dual purpose" rule forecloses coverage here even if furtherance and origination are established on this record. As noted above, the "dual purpose" rule provides that travel encompassing both business and personal purposes "is in the course and scope of employment only if the business purpose is both a necessary and a sufficient cause for the travel." *Leordeanu*, 330 S.W.3d at 243. Stated another way, the "dual purpose" rule "does not exclude work-required travel from the course and scope of employment merely because the travel also furthers the employee's personal interests that would not, alone, have caused him to make the trip." *Id*. at 244.

The record here demonstrates that the claimants' travel to the Town & Country during their lunch break furthered both Midwestern's business purposes and the claimants' own personal purposes.

At a minimum, the lunchtime travel at issue here furthered Midwestern's business purposes because the claimants discussed work-related topics during their lunch break such as safety, task coordination, and scheduling.

The travel also furthered the claimants' personal purposes because they were allowed to perform non-business tasks during the lunch hour such as making personal phone calls and buying snacks for consumption after working hours. On the day of the accident, Luna spoke to his wife briefly on his cell phone as lunch was ending before getting into the truck to return to the tank farm. Williams testified that he was allowed to and did make personal calls from the Town & Country restaurant during the lunch break.

Williams was talking with his mother on his cell phone in the truck at the moment of impact. Jerrols also testified that he was allowed to call home during the lunch break. According to Luna, lunch-break conversations sometimes focused on work-related matters and sometimes focused on personal matters. According to Midwestern's Rene Jackson, Midwestern allowed employees to buy snacks during their lunch break to be consumed after working hours at the motel; additionally, she confirmed that Midwestern allowed employees to make personal calls during the lunch break.

As discussed earlier, the record contains factual disputes concerning other aspects of the claimants' lunch break. These factual disputes are immaterial to section 401.011(12)'s origination inquiry because there is other, undisputed evidence establishing origination. However, these factual disputes are material to section 401.011(12)(B)'s "dual purpose" rule and exceptions to the exclusion for "dual purpose" travel between work and a place other than home.

The claimants asserted that Midwestern required them to eat lunch so they would be able to perform their strenuous jobs, and paid them for doing so. Texas Mutual points to other testimony indicating that Midwestern did not require the claimants to eat lunch and left this decision up to its employees, although the physically demanding nature of the work made it a good idea to eat lunch. The claimants testified that Midwestern required them to eat lunch at a location away from the tank farm due to the presence of hazardous substances in the tanks. Texas Mutual points to testimony indicating the claimants were allowed to eat in the Midwestern truck or at another location at the tank farm that was not in the immediate vicinity of the specific tanks being cleaned.[5]

---

[5] On motion for rehearing, Texas Mutual contends the only potential fact issue that could be material to the "dual purpose" rule's applicability focuses exclusively on whether Midwestern required the claimants to eat lunch at a specific location, the Town & Country. We disagree. Section 401.011(12)(B)(i)'s inquiry into whether "the travel to the place of the occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel" potentially encompasses circumstances in which an employee is injured while traveling to a restaurant selected by the employee. *See Potter*, 807 S.W.2d at 420-22 (material fact issue existed regarding "dual purpose" rule's applicability to traffic accident during lunchtime travel between worksite and a Wendy's restaurant; injured employee "was about to go to Wendy's for lunch before [the

24

The claimants also asserted that their supervisor determined they would eat at the Town & Country.[6] Texas Mutual points to testimony indicating the claimants could exercise their own discretion and choose where to eat within the time constraints of their lunch hour.

In short, this record contains evidence of multiple purposes — both work-related and personal — that were accomplished during the lunch break and promoted by the claimants' lunchtime travel. The primary purpose and impetus behind the claimants' decision to travel to the Town & Country during their lunch break is disputed on this record. Therefore, we conclude that fact issues exist as to whether, in the words of

employee's supervisor] . . . arrived at the job site," asked if he could "tag along" on lunch travel to Wendy's, and then discussed work-related matters with the employee en route to lunch at Wendy's before accident occurred).

[6] Citing *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.), Texas Mutual asks this court to disregard the following statement in Luna's affidavit: "For lunch each day, Midwestern required that a Midwestern employee drive the crew members in a Midwestern vehicle from the jobsite to a nearby gas station with a restaurant, the Town & Country." Texas Mutual contends that this statement should be disregarded because it was inserted in the affidavit solely to create a conflict with Luna's prior deposition testimony. During his deposition, Luna answered "I was never told that" when asked whether he had been told "you've got to go to the Town & Country to eat lunch . . . ." Luna answered "no" to another question asking, "Did someone tell you that the only place you could eat lunch and the only place you could gas up in Jal was the Town & Country convenience store . . . ?" Although the sham affidavit doctrine has been recognized by several courts of appeals, others have rejected or limited this doctrine. *See Argovitz v. Argovitz*, Nos. 14-07-00206-CV & 14-07-00396-CV, 2008 WL 5131843 at *20 (Tex. App.—Houston [14th Dist.] Dec. 9, 2008, pet. denied) (mem. op.) (collecting cases). We do not address whether the challenged statement from Luna's affidavit should be disregarded under the sham affidavit doctrine because Texas Mutual raised no such objection in the trial court. *See Bexar Cnty. v. Lopez*, 94 S.W.3d 711, 715 (Tex. App.—San Antonio 2002, no pet.); *see also Browne v. Kroger Co.*, No. 14-04-00604-CV, 2005 WL 1430473 at * 3 (Tex. App.—Houston [14th Dist.] June 21, 2005, no pet.) (mem. op.). This circumstance makes it unnecessary for us to determine whether the sham affidavit doctrine "is recognized by the Fourteenth Court of Appeals or may be applicable to this case." *See Argovitz,* 2008 WL 5131843 at *20. Independently of Luna's affidavit, Jerrols testified in his deposition that he ate lunch exclusively at the Town & Country before the accident. When asked, "How do you know that," Jerrols responded: "Well, they had control over there." Jerrols was asked: "How did they have control over that?" He responded: "They had a company driver. We were in a company vehicle everybody had to ride together." When Jerrols was asked who chose the Town & Country, he responded: "Supervisor, I believe." Jerrols testified that the supervisor did not tell him personally that he had to eat at the Town & Country. In his affidavit, Jerrols stated: "Midwestern retained complete control over my time, and Midwestern paid me for my time from the moment I was picked up in the company vehicle at the hotel in the morning until I returned to the hotel in the company vehicle in the evening." Jerrols also stated in his affidavit that "I was never free to choose to separate myself from the rest of the crew."

25

subsections (B)(i) and (B)(ii), travel to the Town & Country in connection with the claimants' lunch break "would have been made even had there been no personal or private affairs of the employee to be furthered by the travel" and "would not have been made had there been no affairs or business of the employer to be furthered by the travel." *See Potter*, 807 S.W.2d at 422 (fact issues existed under the "dual purpose" rule in connection with traffic accident that occurred during lunch break while employee was riding in employer-owned vehicle driven by his supervisor from construction site where he worked to restaurant for lunch; employee and supervisor discussed construction job during ride). The existence of fact issues under sections 401.011(12)(B)(i) and (ii) precludes summary judgment in favor of either Texas Mutual or the claimants.

## CONCLUSION

We reverse the trial court judgments in Cause Nos. 2009-41875 and 2009-41876, and remand for proceedings consistent with this opinion.


/s/    William J. Boyce
       Justice


Panel consists of Justices Seymore and Boyce and Senior Justice Mirabal.[7]

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.

26