# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-51097

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2015

Lyle W. Cayce
Clerk

AMERICAN ZURICH INSURANCE COMPANY,

Plaintiff-Appellant Cross-Appellee

v.

SANDRA JASSO, Beneficiary of Hilario Jasso, Deceased,

Defendant-Appellee Cross-Appellant

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:12-CV-7

Before STEWART, Chief Judge, BENAVIDES, and OWEN, Circuit Judges.

PER CURIAM:*

After exhausting its state administrative remedies in Texas, Plaintiff-Appellant and Cross-Appellee American Zurich Insurance Company ("Zurich") filed suit in district court seeking reversal of a decision of an appeals panel ("Appeals Panel") for the Texas Department of Insurance, Division of Workers' Compensation ("DWC") finding Defendant-Appellee and Cross-Appellant Sandra Jasso ("Appellee" or "Sandra Jasso") entitled to death benefits. The

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-51097

district court denied Sandra Jasso's motion to dismiss for lack of subject matter jurisdiction. Zurich then filed a motion for summary judgment, and Sandra Jasso filed a motion for partial summary judgment. Affirming the decision of the Appeals Panel, the district court denied Zurich's motion but granted Sandra Jasso's motion. Counsel for Sandra Jasso filed a motion for attorney's fees, which the district court denied in part for various reasons. Zurich appealed the denial of its motion for summary judgment and the grant of Sandra Jasso's motion for partial summary judgment. Sandra Jasso cross-appealed the denial of her motion to dismiss for lack of jurisdiction and the partial denial of her attorney's fees. For the reasons stated herein, we affirm the district court in all respects.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 14, 2011, a contested case hearing officer for the Texas Department of Insurance determined that Hilario Jasso ("Jasso") sustained a compensable injury on July 20, 2010, that resulted in his death, entitling Sandra Jasso to death benefits under the Texas Labor Code. The hearing officer deemed the injury compensable because Jasso was acting in the course and scope of his employment with DCP Midstream ("DCP"). Zurich, DCP's insurer, appealed the decision of the hearing officer to the Appeals Panel, which did not issue a decision within forty-five days of the appeal, causing the decision of the hearing officer to become final on December 19, 2011, pursuant to Tex. Lab. Code § 410.204(c). Zurich then filed the instant case, seeking a determination that Jasso was not acting in the course and scope of his employment with DCP at the time of the accident.

Jasso worked for DCP as a field supervisor based at DCP's Fullerton office on the date of his death. Jasso's job was to oversee field operations, which included scheduling employees, overseeing time off and vacation, and ensuring that all DCP's engines in the gas extraction and pipeline operations divisions

were running.  As part of his job, DCP issued Jasso a cell phone, laptop computer, and a company truck.  The truck was not to be used for personal purposes.  DCP also provided Jasso with a fuel card for the truck but required Jasso to pay income tax on the value of the use of the company truck to commute to and from work.  DCP's logo was on the outside of Jasso's truck. DCP gave Jasso discretion to travel either to the Fullerton office or one of the field locations each day.  Regardless of whether he traveled to the Fullerton office or a field location, Jasso would travel out of Odessa along Highway 385 North.

On July 19, 2010, Jasso took off work for a wellness physical, which was encouraged by DCP so its employees would qualify for an insurance discount. On the morning of July 20, 2010, Jasso returned to his physician's office to have his blood drawn for one more test as a part of the physical.  He left his house for the physician's office later than he would normally leave for work. Jasso received and placed numerous phone calls to various DCP employees before having his blood drawn.  Jasso left the physician's office and proceeded to an off-site work location known as the Love Discharge Facility to meet a DCP employee to help make a decision about laying certain pipeline at that site.  On his way to the Love Discharge Facility, Jasso's truck was struck at an intersection on Highway 385 by a vehicle that ran a stop sign.  This intersection was along the same route as Jasso's daily commute to and from work.  Jasso died as a result of the accident.

## II. DISCUSSION

### A. Jurisdiction and Abstention

We first consider whether the district court had subject matter jurisdiction.  This court reviews an interlocutory appeal of a denial of a motion to dismiss for lack of subject matter jurisdiction de novo.  *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 792 (5th Cir. 2008).  Tex. Lab. Code §

410.251 provides that "[a] party that has exhausted its administrative remedies under this subtitle and that is aggrieved by a final decision of the appeals panel may seek judicial review[.]"  Diversity jurisdiction in federal court is allowed for "citizens of different States" for "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs[.]"  28 U.S.C. § 1332(a).

Sandra Jasso makes two arguments that the district court did not have jurisdiction: (1) the enactment of the Texas Workers' Compensation Act of 1989 ("1989 Act") removed the basis for jurisdiction for federal courts to review final decisions of an appeals panel for the DWC, and (2) the amount in controversy was not greater than $75,000, as the district court case was an appeal of an agency finding with no pleading for monetary recovery.

Counsel for Sandra Jasso cites no caselaw to support the contention that the 1989 Act had any effect on federal judicial review of decisions of the DWC. In fact, two courts in this circuit have recently stated that subject matter jurisdiction extends to Texas Workers' Compensation Act cases where the plaintiff has exhausted administrative remedies. *See Rubell v. Gen. Dynamics Corp.*, No. 7:10-CV-00176-O, 2011 WL 477175, at *1 (N.D. Tex. Jan. 20, 2011); *England v. Liberty Ins. Corp.*, No. H:10-1937, 2011 WL 3567084, at *2 (S.D. Tex. Aug. 12, 2011).  The court in *Rubell* noted that "[a]lthough it is unusual to find a worker's compensation case filed in Federal Court because it is a state statutory action, the court does have subject matter jurisdiction so long as complete diversity and the requisite amount in controversy are established." 2011 WL 477175, at *1.  In denying an insurance company's motion to dismiss for lack of subject matter jurisdiction, the court in *England* stated, "there is no Texas law to suggest that this court's jurisdiction ought to be constrained after an initial determination by the DWC that benefits were due."  2011 WL 3567084, at *2.  The *England* court concluded that "because . . . a Texas state

No. 13-51097

court would hold that it has jurisdiction, this court . . . has jurisdiction over this diversity action." *Id.*

As noted in *Rubell*, this type of suit is not common in federal court, but we agree it is not necessarily improper. 2011 WL 477175, at *1.[1] Tex. Lab. Code § 410.251 allows judicial review after exhaustion of administrative remedies for parties aggrieved by a final decision of an appeals panel of the DWC. The Texas Legislature, when attempting to limit jurisdiction, makes this intent clear in the statute. *See, e.g., Chapman v. Commonwealth Land Title Ins. Co.,* 814 F. Supp. 2d 716, 721 (N.D. Tex. 2011) (finding the Texas Legislature not using the term "exclusive jurisdiction" in the Texas Title Insurance Act "was not just mere oversight because the Texas Legislature has demonstrated that it knows how to confer such jurisdiction when it desires by carefully selecting the wording of the statute."); *In re Entergy Corp.,* 142 S.W.3d 316, 323 (Tex. 2004) (holding that the Texas Legislature limited jurisdiction to the Public Utilities Commission for disputes about rates, operations, and services of an electric utility by stating that "the Commission has exclusive original jurisdiction over [these issues]." (citing Tex. Util. Code § 32.001 (West 2007))). While *Chapman* and *Entergy Corp.* each addressed exclusive jurisdiction of Texas administrative agencies, each case is supportive of the idea that the Texas Legislature does, in certain situations, put limits on what tribunals can hear certain disputes. The Texas Legislature in Tex. Lab. Code § 410.251 included no language attempting to limit appeals from the

---

[1] The district court's jurisdiction is also not limited by 28 U.S.C. § 1446(c), which bars removal of state court actions arising under workers' compensation laws of that state, as this case was originally filed in the federal district court. *See Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 352 ("Congress used language specifically barring *removal* of such cases from state to federal courts [but] left unchanged the old language which . . . specifically permits civil suits to be filed in federal courts in cases where there are both diversity of citizenship and the prescribed jurisdictional amount." (emphasis added)).

5

No. 13-51097

DWC to only state courts. A Texas state court would have jurisdiction here, and the district court accordingly had diversity jurisdiction. Nothing in the 1989 Act or its subsequent judicial interpretation indicates otherwise. Thus, Appellee's argument here fails.

Counsel for Sandra Jasso also argues there is an insufficient amount in controversy. This argument is without merit. We have stated:

> [U]nder the Texas workers' compensation scheme, if the insurance company claims an amount supporting jurisdiction, 'federal jurisdiction exists *unless* the insured denies the allegation that he will seek more than [the jurisdictional minimum] in the court action and makes an affirmative claim for compensation for a sum which does not exceed [the jurisdictional minimum]. If the employee counterclaims for less than the minimum jurisdictional amount, 'it then becomes clear to a legal and mathematical certainty that the amount in controversy is less than the jurisdictional requisite.'

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Russell*, 972 F.2d 628, 630 (5th Cir. 1992) (citing *Hardware Mut. Cas. Co. v. McIntyre*, 304 F.2d 566, 569−70 (5th Cir. 1962)). Zurich—seeking a reversal of the decision of the Appeals Panel— claims the amount in controversy is over $75,000. Appellee does not actually claim that the death benefits will total less than $75,000 but attempts to rely on the fact that the remedy Zurich prayed for was not an actual damages amount measured in dollars. However, this technicality does not mean there is an insufficient amount in controversy. Although the total amount of damages is uncertain now, the DWC has found that Sandra Jasso is entitled to death benefits, and competent evidence in the record indicated the amount could total over $1 million. In fact, counsel for Sandra Jasso argued the reduction of his attorney's fees was improper because the amount involved "is astronomical" due to the death benefits entitling her to receive $750 per week for life. Her life expectancy is thirty-five more years. Obviously, the total amount of death benefits expected to be paid exceeds $75,000. Thus, there is

a sufficient amount in controversy to satisfy 28 U.S.C. § 1332(a), and the district court had proper subject matter jurisdiction.

Next, counsel for Appellee argues in the alternative that even if the district court did have subject matter jurisdiction over this case, it nonetheless should have abstained from exercising its jurisdiction under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because adequate state remedies exist for this dispute, namely, the DWC appeals process. *Burford* abstention operates as such:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

Contrary to Appellee's stance, "[w]hile *Burford* is concerned with protecting complex state administrative policies from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *Id.* at 362. This court examined *Burford* abstention in relation to the Texas Workers' Compensation scheme in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994). The court in *Trejo* found *Burford* abstention inapplicable because the lawsuit did not involve a state administrative proceeding and did "not seek to interfere with Texas' worker's compensation system." *Id.* at 589. The declaratory judgment action in *Trejo*, which sought interpretation of a settlement agreement entered into after the claimant received an award from

the Texas Workers' Compensation Commission, "would neither affect the state's system of reviewing worker's compensation awards nor be disruptive of the state's policies respecting worker's compensation." *Id.*

The insurer in *Trejo* sought interpretation of a settlement agreement after the available administrative process had been exhausted. 39 F.3d at 586–87. The posture here is similar: there is no other available administrative process to review the decision of the Appeals Panel. While abstention is appropriate on occasion, there exists a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." *Colorado River*, 424 U.S. at 817. Neither requirement of *Burford* abstention is satisfied by federal court review of final decisions of the DWC. A federal district court hearing an appeal from that decision would not meddle in the state administrative process but would merely provide a forum for diverse parties to seek judicial review as contemplated by Tex. Lab. Code. § 410.251. Accordingly, abstention is not proper here.

**B. Course and Scope of Employment**

Turning to the merits, Zurich argues the district court erred in affirming the finding of the Appeals Panel that Jasso was acting in the course and scope of his employment within the meaning of Tex. Lab. Code § 401.011(12). This court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, "[o]n cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable

to the nonmoving party."[2]  *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).  We "may affirm the district court's decision on any basis presented to the district court."  *Haverda*, 723 F.3d at 591 (internal quotation marks and citation omitted).

For an injury to be compensable under the Texas Workers' Compensation Act, the injury must arise out of and in the course and scope of employment.  Tex. Lab. Code § 401.011(10).  Course and scope of employment is defined as "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer."  *Id.* § 401.011(12).  This includes activities conducted on the premises of the employer and at other locations.  *Id.*

One statutory exclusion from course and scope is implicated in this case: "transportation to and from the place of employment."  *Id.* § 401.011(12)(A). This exclusion is commonly referred to as the "coming and going" exclusion.  If an employee's ultimate destinations are home and work, despite any intermediate stops in-between, the "coming and going" exclusion merits analysis.  *Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 246 (Tex. 2010) ("The 'coming and going' rule developed . . . specifically for travel between home and work."); *see Zurich Am. Ins. Co., v. McVey*, 339 S.W.3d 724, 727−29 (Tex. App.—Austin 2011, pet. denied) (analyzing the "coming and going" exclusion because the travel was between work and home even though the injury

---

[2] The district court order stated that in "[v]iewing the facts most favorable to Defendant, these summary facts establish that DCP required Jasso to travel as part of its business."  The district court then relied on this finding in granting Sandra Jasso's motion and denying Zurich's.  In truth, there are no disputed facts, and the motions turn on the issue of whether, as a matter of law, Jasso's travel was in the course and scope of his employment with DCP.

occurred while the employee was first on his way to pick up a co-worker and then to a mandatory work conference in another city).

However, even when the "coming and going" exclusion must be analyzed, the activity might still be excepted from this exclusion if one of the following is satisfied:

> (i) *the transportation is furnished as part of the contract of employment or is paid for by the employer*; (ii) the means of the transportation are under the control of the employer; or (iii) the employee is directed in the employee's employment to proceed from one place to another place.

Tex. Lab. Code § 401.011(12)(A)(i)−(iii) (emphasis added).

Satisfying an exception to the "coming and going" exclusion does not necessarily mean the travel falls within the course and scope of employment; it only means that this exclusion does not keep the activity outside the course and scope of employment. *McVey*, 339 S.W.3d at 729. Once the exclusion is deemed excepted from, courts then examine whether the activity originated in the work of the employer and whether the employee was engaged in or about the furtherance of the business of the employer. *Id.* at 730.

It is undisputed that Jasso was traveling to and from work in a truck provided by DCP at the time of his accident. Thus, while the "coming and going" exclusion is implicated, Jasso's activity is excepted from this exclusion. *See Leordeanu*, 330 S.W.3d at 249 (stating that the employee "was driving a car provided by her employer at the time of her accident and therefore [was] excepted from the 'coming and going' rule").[3]

---

[3] Zurich argued that the district court erred by disagreeing with its argument that since Jasso's vehicle was not a necessity to his contract of employment with DCP, the provision-of-the vehicle exception was ineffective. Under this theory, if the vehicle was not a necessity to the contract of employment, it would be excluded under the coming and going exclusion. Texas jurisprudence disagrees with this application. *See Leordeanu*, 330 S.W.3d at 249 (applying the provision-of-the vehicle exception without considering necessity). As discussed *infra*, necessity is only considered at the origination stage. *See, e.g., Seabright Ins.*

No. 13-51097

Jasso's activity still may be in the course and scope of his employment with DCP, as long as it satisfies the origination and furtherance requirements. Outside of the commuting context, furtherance may be a more complicated question, but "[a]n employee's travel to and from work makes employment possible and thus furthers the employer's business, satisfying" this requirement. *Id.* at 242. As it is undisputed that Jasso was traveling to and from work at the time of the accident, his activity satisfies the furtherance requirement. The only remaining requirement is that the activity "originates in the work, business, trade, or profession of the employer." Tex. Lab. Code § 401.011(12).

In Texas, "there is no bright line rule for determining if employee travel originates in the employer's business as each situation is dependent on the facts." *Seabright Ins. Co. v. Lopez*, 427 S.W.3d 442, 448 (Tex. App.—San Antonio 2014, pet. filed May 9, 2014). Further, "[n]o single fact is dispositive; rather, [courts] consider the nature of the employee's job, the circumstances of the travel, and any other relevant facts." *Id.* Courts are tasked with "determin[ing] whether the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *Leordeanu*, 330 S.W.3d at 242 (citation omitted).

We start with the assumption that an employee's travel to and from work does not ordinarily satisfy origination, as "[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers." *Id.* (quoting *Evans v. Ill. Emp'rs Ins. of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990)). However, as a

---

*Co. v. Lopez*, 427 S.W.3d 442, 448−49 (Tex. App.—San Antonio 2014, pet. filed May 9, 2014) (discussing the concept of necessity as related to origination).

general rule, an employee's travel originates in his employer's business if the travel was pursuant to the express or implied requirements of the employment contract. *Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2012, no pet. h.). In situations where "the employer requires the employee to travel as part of its business—i.e., pursuant to the contract of employment—the risk of traveling stems from that business and properly can be said to arise as a result of the employer's business." *Id.* (quotation omitted). Further, "only employer-provided transportation that amounts to a necessity from the employer's perspective, and not just a gratuitous accommodation to the employee, is *sufficient, without more*," to satisfy the origination requirement. *Seabright*, 427 S.W.3d at 448−49 (emphasis added) (footnote omitted). It is clear, however, that even if the vehicle was not a necessity to the contract, the court can still find that the travel originated in the employer's business. *See id.* (holding that "the company truck was furnished to [the employee] gratuitously" and even still, as a matter of law, the employee's travel originated in and furthered the employer's business).

The *Seabright* court found that origination was satisfied based on the additional evidence that the employee and his wife resided 450 miles away from the jobsite, "[the employer] paid [the employee] a per diem while he was working at the . . . jobsite that was not paid to its workers at its home office[,] . . . and [the employee] used his per diem to stay at a motel about forty miles [from the jobsite]." *Id.* at 459. This additional evidence "illustrate[d the employer] clearly knew the only reason employees . . . would be present in the area of [the jobsite] was their job." *Id.* at 450. "As such, a commute to the jobsite [was] not only expected, but in reality, required." *Id.* In finding that the travel satisfied origination, the *Seabright* court stated "a strong nexus

between [the employee's] employment and travel [existed] on the day of the accident." *Id.*

In the present case, the evidence in the record indicates that DCP's provision of the truck to Jasso was not a necessity to the contract of employment because Jasso was required to pay income tax for his use of the truck between work and home. There was no contravening evidence to suggest the provision of the truck was anything more than gratuitous. Thus, DCP's provision of the truck does not establish on its own that Jasso's travel was within the course and scope of employment, and we must consider the remaining evidence. *See Seabright*, 427 S.W.3d at 448−49. Facts that tend to show there was a strong nexus between Jasso's travel and his employment with DCP are: (1) DCP supplied Jasso with the truck and a fuel card; (2) DCP required Jasso to travel to the field sites away from the Fullerton office; (3) Jasso traveled to field sites about 20% of the time; and (4) the wellness physical was encouraged by DCP. Facts that do not tend to show strong nexus are: (1) Jasso had to pay income tax for the use of his truck between work and home; (2) this was not over-night and across-state travel as in *Seabright*, but travel from Jasso's home to an off-site work location; (3) Jasso was on the same route he would have been on during his normal commute; and (4) Jasso left later than normal and stopped by his doctor's office before heading to the worksite.

Regarding the fact that Jasso was on the same route he would have been on during his normal commute, it is true that "[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers." *Leordeanu*, 330 S.W.3d at 242. But Jasso was in fact traveling to the off-site Love Discharge Facility, not the home office in Fullerton—which DCP required him to do—and which created extra travel and extra risk for Jasso. Evidence in the record indicated Jasso would be returning to the Fullerton office after his trip to the Love

13

Discharge Facility.  Jasso was on the only major road going north out of Odessa, which happens to be along the same route as the home office.  This was extra travel and extra risk created by the requirements of Jasso's employment with DCP.  It would be arbitrary for the compensability of Jasso's injuries to be based solely on the geographic placement of his off-site work location.  Additionally, it is not of particular import that Jasso left his home later than normal, especially in light of the fact that DCP encouraged Jasso to undergo the wellness physical.  Further, while the travel required by DCP was not hundreds of miles away from the home office, as in *Seabright*, DCP nonetheless required Jasso to travel beyond his ordinary commute.

There was a strong nexus between Jasso's travel to the Love Discharge Facility on July 20, 2010, and his employment with DCP.  We conclude that Jasso's travel to the off-site Love Discharge Facility on the day of his accident originated in the business of DCP.  Accordingly, we affirm the district court's finding that Jasso's travel was in the course and scope of his employment with DCP.

**C. Attorney's Fees**

Lastly, counsel for Sandra Jasso argues that the district court improperly reduced his attorney's fees.  It is understood that "[i]n awarding attorney's fees, the district court is empowered to exercise its informed discretion, and a reviewing court will not disturb the judgment of the district court absent a showing of an abuse of discretion." *Graves v. Barnes*, 700 F.2d 220, 221 (5th Cir. 1983).  Further, "the district court's factual findings [regarding attorney's fees] will not be disturbed unless they are clearly erroneous." *Id.* at 221−22.  Tex. Lab. Code § 408.221(c) is a fee-shifting statute that provides:

> [a]n insurance carrier that seeks judicial review . . . of a final decision of the appeals panel regarding compensability or

> eligibility for, or the amount of, income or death benefits is liable for reasonable and necessary attorney's fees . . . incurred by the claimant as a result of the insurance carrier's appeal if the claimant prevails on an issue on which judicial review is sought by the insurance carrier . . . .

Fees sought under this statute must be approved by the court based on written evidence presented to the court. *Id.* § 408.221(a), (b). The court considers seven factors in evaluating the fee: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the fee customarily charged in the locality for similar legal services; (5) the amount involved in the controversy; (6) the benefits to the claimant that the attorney is responsible for securing; and (7) the experience and ability of the attorney performing the services. *Id.* § 408.221(d)(1)−(7). It is not necessary to establish each of these factors. *See Hays & Martin, L.L.P. v. Ubinas-Brache*, 192 S.W.3d 631, 636 (Tex. App.—Dallas 2006, pet. denied).

The district court reduced the hourly rate requested by Sandra Jasso's counsel from $375 per hour to $288 per hour. Zurich pointed out that 28 Tex. Admin. Code § 152.4(d) allows for a maximum rate of $150, less than half the rate requested by Sandra Jasso's counsel. The district court found it was not bound by this limitation, however, but only by Tex. Lab. Code § 408.221(d) because an award under § 408.221(c) "is not subject to commissioner rules . . . ." Tex. Lab. Code § 408.221(c). This is correct because the award here is made pursuant to Tex. Lab. Code § 408.221(c), as Zurich sought judicial review of a final decision of the Appeals Panel regarding the issue of Sandra Jasso's eligibility for death benefits, on which Sandra Jasso originally prevailed.

The forum district in this case, Odessa, Texas, is the relevant locality in which to compare the fees customarily charged. *Hawkins v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 3−96−CV−3219−R, 1998 WL 74259, at *1 (N.D. Tex. Feb. 13,

No. 13-51097

1998); *Garmong v. Montgomery Cnty.*, 668 F. Supp. 1000, 1007 (S.D. Tex. 1987). Zurich put forth evidence that the $375 hourly rate is not consistent with prevailing rates in Odessa, Texas. This is the main factor from Tex. Lab. Code § 408.221(d) on which the district court relied. Zurich provided the *Texas Lawyer*'s Annual Salary and Billing 2012 Survey and the State Bar of Texas 2011 Hourly Fact Sheet. The district court noted that: (1) the average billing rate for equity partners in San Antonio in 2012 was $285 per hour; (2) the rates for equity partners in Texas in areas other than Dallas, Houston, or San Antonio averaged $289 per hour; (3) the median rate in West Texas for personal injury litigation was $205 per hour and $257 per hour for labor and employment litigation; and (4) attorneys with approximately 25 years of experience in West Texas charged an average of $288 per hour. Based on this, the district court found the $375 per hour rate too high. The district court relied on reasonable data in reducing Sandra Jasso's counsel's hourly billing rate to $288. Thus, the district court did not abuse its discretion and made no clearly erroneous factual findings in reducing the hourly rate of Sandra Jasso's counsel. *See Graves*, 700 F.2d at 221.

The district court also reduced the fees requested for time spent traveling to 17.5 hours at the hourly rate of $288, as opposed to the requested 35 hours at $375 per hour. Courts often reduce working and non-working travel time. *See In re Babckock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (per curiam) (noting that generally "it is not an abuse of discretion to discount non-working (and even working) travel time"); *see also Watkins v. Fordice*, 7 F.3d 453, 458–59 (5th Cir. 1993) (holding that the district court did not abuse its discretion by reducing the hourly rate billed by 50% for travel time). As the district court properly noted, counsel for Sandra Jasso did not provide any evidence that work was done during this travel and did not demonstrate that comparably skilled practitioners charge their full hourly rate for travel time.

16

No. 13-51097

The district court did not abuse its discretion by reducing attorney's fees for time billed while traveling.

The district court also did not allow any expenses because no written evidence of the expenses was given; counsel merely listed the lump sum owed of $2,516.79.  Instead, the district court reserved judgment on the issue of expenses until counsel provided the court with invoices, receipts, and supporting affidavits (including the descriptions and nature of each expense and the reasons therefore).  Sandra Jasso's counsel filed supplements in the form of spreadsheets showing the amount, date, and description of expenses incurred in this case.  The district court ruled that Sandra Jasso's counsel did not provide adequate documentation in the form of invoices or receipts, as requested, but rather only provided its in-house expense spreadsheet.  Thus, the district court denied Sandra Jasso's counsel all requested expenses.  The district court did not abuse its discretion in disallowing these expenses after counsel did not comply with its order.  *See Glass v. U.S.*, 335 F. Supp. 2d 736, 742−43 (N.D. Tex. 2004) (holding that failure to produce supporting documentation regarding billing statements of counsel after an order to was a factor in denying requested attorney's fees).

Counsel for Sandra Jasso also requested attorney's fees in the event the district court case was appealed to this court and the United States Supreme Court. The district court denied the request for appellate fees.  It is well settled in this circuit that a denial of appellate attorney's fees by the district court before an appeal is taken is proper.  *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003) ("It is difficult to imagine how a district court's refusal to award appellate attorney fees before an appeal had even been taken could possibly be declared an error.").  Rather, "[t]he issue of appellate attorney's fees is a matter for the district court

17

following the resolution of an appeal." *Id.*  Thus, the district court did not abuse its discretion by not allowing these prospective appellate fees.

The district court did not abuse its discretion in disallowing any of the requested attorney's fees from Sandra Jasso's counsel.

## III. CONCLUSION

In conclusion, we AFFIRM the district court's denial of Sandra Jasso's motion to dismiss.  We also AFFIRM the district court's grant of partial summary judgment in favor of Sandra Jasso and its denial of Zurich's motion for summary judgment.  Lastly, we AFFIRM the district court's denial of certain attorney's fees requested by counsel for Sandra Jasso.