# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2022

Lyle W. Cayce
Clerk

No. 20-50465

Gilberto Alvarez,

*Plaintiff—Appellant*,

*versus*

Ryan D. McCarthy, Secretary of the Army, In his official capacity,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:16-CV-172

Before Wiener, Graves, and Duncan, *Circuit Judges*.

Per Curiam:*

Gilberto Alvarez appeals three orders concerning his requests for attorney's fees. For the reasons that follow, we affirm in part, vacate in part, and remand.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50465

## I.

Gilberto Alvarez worked as an orthotist for the Department of the Army ("the Army") in Fort Hood, Texas.[1] When Alvarez was not selected for a supervisor position at the orthopedic brace clinic where he worked, he filed a complaint with the Fort Hood Equal Employment Opportunity Office, alleging that national-origin discrimination caused his non-selection. After he was again passed over for the position, Alvarez filed suit, alleging that the Army had retaliated against him for filing the EEO complaint, in violation of Title VII of the Civil Rights Act of 1964.

Alvarez's lead counsel was Colin Walsh, a partner at Wiley Walsh, P.C. in Austin, Texas. Walsh eventually brought on Jairo Castellanos, an associate at Wiley Walsh; Kalandra Wheeler, a partner at Wiley Wheeler, P.C. in Houston; and Eric Dama, a senior trial attorney at Rob Wiley, P.C. in Dallas. The litigation spanned three motions to dismiss, discovery, a motion for summary judgment, a trial, and numerous post-trial motions.

Trial took place in October 2019. Jury selection lasted half a day, and each side was given five hours to present its case, excluding opening and closing arguments. Seven witnesses—none of whom were experts—testified. The jury was asked a single question regarding liability: "Do you find that Plaintiff Gilberto Alvarez would have been given a promotion to the position of Supervisor of the Fort Hood Brace Shop but for filing a complaint with the Fort Hood EEO alleging national origin discrimination?" The jury answered yes and awarded Alvarez a total of $100,416, the full amount of damages

---

[1] An orthotist "makes and fits braces and splints for patients who need added support for body parts that have been weakened by injury or disease." *Orthotist*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/orthotist (last visited Mar. 10, 2022).

sought. The final judgment awarded $144,731.91 in damages and pre-judgment interest, as well as post-judgment interest.

The final judgment also gave Alvarez 14 days to move for attorney's fees and costs. Alvarez retained Robert McKnight, a solo practitioner in Victoria, Texas, to assist with the motion. In his initial motion for attorney's fees, Alvarez sought a lodestar fee of $300,608.50 for 568.50 hours at rates ranging from $350 to $585 per hour. He also requested $12,891.14 in costs. The Army filed a response in opposition, contending that the court should reduce the number of compensable hours, the hourly rate, and specified costs. In reply, Alvarez subtracted 9.20 hours from the initial fee motion, resulting in an adjusted lodestar of $296,522. Alvarez also filed his first supplemental motion for attorney's fees, requesting $4,000 in compensation for ten hours that McKnight had spent replying in support of the initial fee motion.

The district court partially granted the initial fee motion. It awarded $126,770 in attorney's fees and $4,223.65 in costs. The court "considered the simplicity of the case . . . in conducting its lodestar analysis." It determined that the "hours expended by [Alvarez's] legal team were unreasonable and unnecessary," in part because Alvarez retained five attorneys from three different law firms. The court used the Army's opposition "as a template" in reducing the number of compensable hours, excluding (1) pre-trial hours related to internal conferencing, opening statement preparation, Wheeler's review of pleadings and depositions, and document revision; (2) hours related to Wheeler's preparation for and appearance at trial; (3) post-trial hours related to document revision and McKnight's preparation of the fee motion; (4) hours related to the presentation of two witnesses at trial; (5) and hours related to a pre-trial focus group. The court determined that Alvarez's requested hourly rates were excessive and unreasonable, and it reduced the rates for all attorneys to $350

No. 20-50465

per hour. The court's analysis relied heavily on the 2015 State Bar of Texas Hourly Fact Sheet and declined to follow *Johnson v. Southwest Research Institute*, a 2019 case in which another Western District of Texas judge awarded Walsh, Wheeler, Castellanos, and McKnight the same rates that they requested in Alvarez's fee motion.[2] The court also declined to award costs related to attorney travel and to the focus group.

In a text-only docket order, the district court later denied as moot Alvarez's first supplemental fee motion. Alvarez timely appealed the district court's decisions regarding the initial fee motion and first supplemental fee motion. The Army moved for a new trial or remittitur, Alvarez responded in opposition, and the Army replied. The court ordered the parties to mediate, but the mediation was unsuccessful. The court later denied the Army's motion for a new trial.

Alvarez then filed his second supplemental fee motion, requesting compensation for hours spent opposing the Army's motion for a new trial or remittitur and for attending the mediation. The court granted that motion in part, concluding that all requested hours were compensable but reducing the hourly rate to $350, consistent with the initial fee order. Alvarez timely appealed. His present appeal challenges all three fee orders.

## II.

We review the district court's award of attorney's fees for abuse of discretion.[3] This deferential standard of review is "appropriate in view of the district court's superior understanding of the litigation and the desirability of

---

[2] *See* No. 5:15-297, 2019 WL 4003106 (W.D. Tex. Aug. 23, 2019).

[3] *Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 352 (5th Cir. 2019).

No. 20-50465

avoiding frequent appellate review of what essentially are factual matters."[4] "To constitute an abuse of discretion, the district court's decision must be either premised on an erroneous application of the law, or on an assessment of the evidence that is clearly erroneous."[5]

## III.

Alvarez challenges several components of the district court's initial fee order. We address each challenge in order.

## A.

Alvarez challenges the district court's lodestar calculation. District courts in this circuit calculate attorney's fees using "the lodestar method—multiplying the number of hours reasonably expended by an appropriate hourly rate."[6] After determining the lodestar amount, district courts employ a twelve-factor test derived from *Johnson v. Georgia Highway Express, Inc.*[7] "to determine whether counsel's performance requires an upward or downward adjustment from the lodestar."[8]

This court reviews the district court's "initial determination[s] of reasonable hours and rates"—the lodestar's components—for clear error.[9]

---

[4] *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

[5] *Torres*, 945 F.3d at 352 (quoting *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008)).

[6] *Cruz v. Maverick Cnty.*, 957 F.3d 563, 574 (5th Cir. 2020).

[7] 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

[8] *Cruz*, 957 F.3d at 574.

[9] *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

No. 20-50465

The lodestar benefits from "a strong presumption of . . . reasonableness."[10] We review adjustments to the lodestar made pursuant to the *Johnson* factors for abuse of discretion, "specifically to determine if the district court sufficiently *considered* the appropriate criteria."[11]

**1.**

Alvarez first asserts that the district court failed to explain its lodestar calculation adequately. Although district courts have broad discretion when making fee awards, "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award."[12] However, we do not require a "complete litany" that accounts for every hour in "excruciatingly explicit" detail.[13] Rather, the district court's explanation must merely be "complete enough" to permit us to "determine [that] the court . . . used proper factual criteria."[14]

Here, the district court provided a five-page analysis, discussing specific categories of time it excluded as unnecessary, redundant, or excessive. The district court's explanation of its fee calculation was sufficient.

**2.**

Alvarez also contends that the district court committed several errors when calculating appropriate hourly rates. "Hourly rates are to be computed

---

[10] *Id.*

[11] *Cruz*, 957 F.3d at 574 (internal quotation marks omitted) (emphasis in original) (quoting *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 258 (5th Cir. 2018)).

[12] *Hensley*, 461 U.S. at 437.

[13] *Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir. 1990) (internal quotation marks omitted).

[14] *Id.* (quoting *Brantley v. Surles*, 804 F.2d 321, 325–26 (5th Cir. 1986)).

No. 20-50465

according to the prevailing market rates in the relevant legal market . . ."[15] The relevant legal market, in turn, is generally "the community in which the district court sits."[16]

### a.

Alvarez asserts that the district court improperly factored simplicity—one of the *Johnson* factors[17]—into its rate calculation. Citing *Perdue v. Kenny A. ex rel. Winn*,[18] Alvarez contends that simplicity may be factored into a calculation of the number of hours expended, but not of hourly rates. But *Perdue* does not expressly forbid district courts from factoring simplicity into hourly rate calculations; rather, it counsels that a district court may not *increase* the lodestar based on a factor that it used to *calculate* the lodestar.[19] The district court's determination of the reasonable hourly rate was not clearly erroneous.

### b.

Next, Alvarez contends that the district court erred in calculating the hourly rates by consulting its own knowledge and experience. We have observed that an "hourly fee awarded must be supported by the record; the district court may not *simply* rely on its own experience in the relevant legal

---

[15] *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000).

[16] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Cts. Trying Crim. Cases*, 148 F.3d 554, 558 (5th Cir. 1998), *abrogation on other grounds recognized by Sanchez v. City of Austin*, 774 F.3d 873, 884 n.8 (5th Cir. 2014)).

[17] *See* 488 F.2d at 718.

[18] 559 U.S. 542, 553 (2010).

[19] *See id.*; *see also Blum v. Stenson*, 465 U.S. 886, 898 (1984) (explaining that a case's novelty and complexity could not support an "upward adjustment" from the lodestar because they were factored into the lodestar itself).

No. 20-50465

market to set a reasonable hourly billing rate."[20] In this case, the district court applied its "own knowledge and experience concerning reasonable and proper fees." But the court did not "*simply* rely on its own experience;"[21] rather, the court gave "[s]ignificant [w]eight to the State Bar of Texas Hourly Fact Sheet Publication" when it calculated a reasonable rate. This publication, which contains "data collected on the hourly rates of 4,260 licensed and practicing, full-time private practitioners who provided hourly rate information for the calendar year 2015," helps clarify the "prevailing market rates in the relevant legal market," according to which "[h]ourly rates are to be computed."[22] As we explain below, the district court did not clearly err in determining that the Fact Sheet was an appropriate guide for setting the hourly rate, so it provides record support.[23] The district court did not rely solely on its own experience to determine an hourly rate unsupported by the record so Alvarez cannot show an error.

**c.**

In addition to the alleged legal errors addressed above, Alvarez also asserts that the district court committed several factual errors when

---

[20] *McClain v. Lufkin Indus.*, 649 F.3d 374, 383 (5th Cir. 2011) (emphasis added) (quoting *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997)); *see also Cobb v. Miller*, 818 F.2d 1227, 1232 & n.7 (5th Cir. 1987) (noting that a magistrate "should not have considered his own experience" "[i]n arriving at a reasonable hourly rate" "since it is not one of the *Johnson* factors," but holding that the magistrate's "findings on specific *Johnson* factors [were] sufficient to allow us to affirm his determination of the lodestar amount").

[21] *McClain*, 649 F.3d at 383 (emphasis added) (quoting *LULAC*, 119 F.3d at 1234).

[22] *Hopwood*, 236 F.3d at 281.

[23] *See Am. Zurich Ins. Co. v. Jasso*, 598 F. App'x 239, 250 (5th Cir. 2015) (unpublished) (affirming a fee order that reduced the plaintiff's requested hourly rates based on the 2011 Fact Sheet, which we characterized as "reasonable data" on which the district court could rely).

calculating the hourly rate. Alvarez first claims that the district court "failed to acknowledge at any point in its fee order . . . supporting testimony from Schmidt and O'Brien," two attorneys who testified that the requested rates were reasonable. Although the court did not explicitly mention Schmidt's and O'Brien's declarations, it did state that it had considered "the parties' briefing . . . and the case file" in making the fee determination.

Second, Alvarez claims that the district court "discounted the evidence that all of the fee applicants [besides Dama] requested and received exactly the same hourly rates less than two months before [this] trial . . . in [*Johnson v. Southwest Research Institute*]." Here, the district court "decline[d] . . . to [f]ollow *Johnson*,"[24] explaining that "the hourly rates upon which the *Johnson* court relied were rates awarded to attorneys in national and international law firms with hundreds of attorneys." The district court also observed that "each of those cases required some form of specialization on the part of counsel," whereas "*this litigation* was devoid of any necessity for [Alvarez's] counsel to have any specialized training nor were there any issues involved that were complex." The district court also noted that "the rates considered by the *Johnson* court were rates applicable to markets other than Waco." When we review the cases cited in *Johnson v. Southwest Research Institute*, we cannot say that these conclusions are clearly erroneous.[25]

---

[24] *Johnson v. Southwest Research Institute*, the case to which the district court is referring, is unrelated to *Johnson v. Georgia Highway Express, Inc.*, the Fifth Circuit case discussed *supra*.

[25] *See Johnson*, 2019 WL 4003106, at *7; *Midcap Media Fin., L.L.C. v. Pathway Data, Inc.*, No. 1-15-CV-00060 AWA, 2018 WL 7890668, at *2–3 (W.D. Tex. Dec. 19, 2018) (in a breach of contract case, awarding rates up to $755/hour for Haynes & Boone attorneys in Austin); *Xpel Techs. Corp. v. Carlas Int'l Auto. Accessory, Ltd.*, No. 16–CA–01308–DAE, 2017 WL 9362801, at *9 (W.D. Tex. Nov. 27, 2017) (in a trademark infringement action, awarding up to $545/hour—an upward adjustment from the San Antonio market rate—for attorneys at Dykema, "a large national law firm"); *City of San*

No. 20-50465

Third, Alvarez challenges the "significant weight" that the district court afforded the State Bar Fact Sheet. The district court concluded that the "Fact Sheet has been and remains a viable barometer of a rate's reasonableness." Some district courts have likewise endorsed the Fact Sheet's utility in recent cases.[26] Others have not.[27]

Alvarez does not dispute that the Fact Sheet constituted evidence of reasonable rates. Instead, he contends that—because of its age, provision of median rates only, and reflection of low response rates—"its probative value is so slight . . . that relying on it as the sole competent evidence resulted in a clearly erroneous determination" of hourly rates. We are mindful of the Fact Sheet's probative limitations, but they were for the district court, not us, to consider.[28] In sum, we cannot say that the district court clearly erred when it determined that the Fact Sheet was a useful "baseline" for calculating a reasonable hourly rate.

---

*Antonio v. Hotels.com, L.P.*, No. 5-06-CV-381-OLG, 2017 WL 1382553, at *9–11 (W.D. Tex. Apr. 17, 2017) (in a class action concerning "specialized" hotel-occupancy law in San Antonio, awarding up to $625/hour for attorneys at McKool Smith); *Sierra Club v. Energy Future Holdings Corp.*, No. W-12-CV-108, 2014 WL 12690022, at *3–6 (W.D. Tex. Aug. 29, 2014) (in a Clean Air Act case, awarding up to $925/hour to attorneys at Gibson Dunn and Crutcher based on their home market of Dallas).

[26] *See, e.g.*, *Burns v. Nielsen*, No. EP-17-CV-00264-DCG, 2021 WL 534711, at *5–6 (W.D. Tex. Feb. 12, 2021); *Morales v. Rausch Grp. & Assoc., LLC*, No. 3:19-CV-2850-B, 2021 WL 75400, at *3 & n.2 (N.D. Tex. Jan. 7, 2021).

[27] *See, e.g.*, *Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immigr. & Customs Enf't*, No. EP-19-CV-00236-FM, 2021 WL 289548, at *12 (W.D. Tex. Jan. 28, 2021); *Miniex v. Houston Hous. Auth.*, No. 4:17-0624, 2019 WL 4920646, at *4 (S.D. Tex. Sept. 13, 2019).

[28] *See Matthews v. Remington Arms Co.*, 641 F.3d 635, 643 (5th Cir. 2011) ("It goes without saying that the district court is in a 'superior position to appraise and weigh the evidence.'" (quoting *Zenith Radio Corp. v. Hazeltime Res., Inc.*, 395 U.S. 100, 123 (1969))); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) ("Due to the district court's superior knowledge of the facts and the desire to avoid appellate review of factual matters, the district court has broad discretion in setting the appropriate award of attorneys' fees.").

**3.**

Alvarez also claims that the district court erred in calculating the number of hours reasonably expended. "The calculation requires a determination of whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended."[29] "Hours which, though actually expended, nevertheless 'are excessive, redundant, or otherwise unnecessary,' or which result from the case being 'overstaffed' are *not* hours 'reasonably expended' and are to be excluded from this calculation."[30]

**a.**

First, Alvarez challenges the district court's exclusion of the time taken to prepare and present two witnesses—Thomas and Johnson—at trial. The district court determined that these witnesses' testimony was "unrelated to causation," the "single issue for the jury to decide."

"A Title VII retaliation plaintiff must establish that: '(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.'"[31] At trial, the Army pointed to Alvarez's "pattern of interpersonal conflicts, not just with [his] coworkers[,] but with [his] patients too." Contrasting a hypothetical successful applicant with Alvarez, the Army contended in its closing presentation that the successful applicant "shows up for work on

---

[29] *LULAC*, 119 F.3d at 1232.

[30] *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) (emphasis in original) (quoting *Hensley*, 461 U.S. at 434).

[31] *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting *Thomas v. Tex. Dep't of Crim. Just.*, 220 F.3d 389, 394 (5th Cir. 2000)).

time, doesn't go fishing in the middle of the day, doesn't slam doors, doesn't use profanity against their coworkers." For his part, Alvarez contended that he was a good employee who had consistently received positive reviews, and that "the Army violated or ignored its own policies and procedures in not selecting" him for a promotion. Rebutting the Army's closing argument, Alvarez described the "Army's entire defense [as] ignore the rules, ignore the policy, ignore the performance reviews." He did so, of course, in an (apparently successful) effort to persuade the jury that the Army lacked a non-retaliatory reason for failing to promote him.

Johnson, an employee relations specialist in the Army's HR Department, testified at length about the Army's promotion process, the performance evaluation process, and Alvarez's positive reviews. Thomas, an "equal employment manager" at Fort Hood, testified at length regarding the Army's processes and procedures for handling EEO complaints, including the one at issue in this case.

We are mindful of the deference owed to the district court and its superior vantage point. And we see no clear error in the district court's decision to award no fees for hours related to Thomas's testimony, which had no obvious connection to the issue of causation. We cannot agree, however, with the district court's conclusion that Johnson's testimony was "unrelated to causation." As noted, much of her testimony went directly to causation. In fact, her testimony on the subject was so important that both parties referenced it in their closing arguments, with the Army citing her by name. The district court's decision not to award fees for the billed hours relating to her testimony was clearly erroneous. We vacate the relevant portion of the fee order accordingly.

**b.**

Alvarez next contests the district court's exclusion of time related to the focus group. The court characterized Alvarez's suit as a "straightforward employment case" and determined that "the hours and costs related to the focus group were unnecessary and should be excluded in their entirety, even if [Alvarez] *believed* that the focus group was necessary." These determinations are not clearly erroneous.

Alvarez disputes the district court's assessment of the case's simplicity, noting that it included "three motions to dismiss, a motion for summary judgment, a trial, opposition to a motion for entry of judgment on the verdict, a motion for new trial, and a cross-appeal." But, as Alvarez recognizes, the focus group was an element of trial preparation. It had no bearing on the various other stages of the case. Each side was given five hours to present its case, only seven fact witnesses testified, and neither party called an expert witness. The district court did not clearly err in determining that the case's lack of complexity meant that it did not warrant a focus group.

**c.**

Alvarez next contends that the district court clearly erred in confirming duplication and other unreasonable billing practices. The district court concluded that, given the case's relative simplicity, "it was unreasonable and inefficient for [Alvarez] to retain five attorneys from three different law firms in three different cities." It then identified, discussed, and excluded three categories of hourly billed time—pre-trial, trial, and post-trial. First, the court excluded pre-trial hours related to internal conferencing, opening statement preparation, Wheeler's review of the case file, and document revision. Alvarez contests these exclusions. He asserts that little conferencing occurred before mid-June 2019, when the case became trial-bound. This point is irrelevant, as the district court only

excluded internal conferencing time "[w]ith respect to pre-trial preparation." Further, Alvarez concedes that (1) "[o]nce the case was bound for trial, the internal conferencing increased" and (2) on fourteen occasions, multiple participants billed for a single conference. Alvarez also criticizes the district court's choice to exclude as excessive time spent preparing the opening statement. But while he insists that the opening statement "is an item of singular importance," he concedes the propriety of the district court's core finding: Walsh had ten separate entries concerning opening statement preparation (totaling 44.20 hours), and Wheeler spent 3.60 hours on an opening for the focus group. Alvarez likewise challenges the district court's exclusion of 14.30 hours that Wheeler spent reviewing pleadings and depositions, but he does not dispute that this time occurred. Alvarez also contests the district court's determination that "almost every pre-trial document was reviewed and revised (sometimes multiple times) by three different attorneys." Nevertheless, Alvarez's briefing acknowledges the existence of collaborative review involving at least two, and sometimes three, attorneys for each major pre-trial submission. The district court did not clearly err when it found these four groups of pre-trial hours to be duplicative and excessive.

The district court also excluded particular hours related to the trial itself. The court observed that Walsh and Castellanos "handled the bulk of the case presentation" and determined that they could have tried the case on their own. It therefore excluded time Wheeler spent preparing for, attending, and presenting Johnson and Thomas at trial. We cannot say that this decision was clearly erroneous.

The court also concluded "that the additional attorney's fees charged by Mr. Dama . . . were not reasonable and . . . were [not] necessary." But, as Alvarez correctly notes, Dama did not attend trial and billed no trial-related hours. Therefore, a finding that Dama's hours were excessive or unnecessary

in this regard is clearly erroneous. Nonetheless, it is not apparent that the district court actually reduced the number of compensable hours based on its clearly erroneous determination. The court explained that it used the Army's opposition "as a template" in setting the number of hours. That opposition highlighted and disputed specific time entries, but since Dama was not at trial, he had no trial-related time entries that the Army could flag and dispute. Moreover, the district court recognized that Alvarez "was represented throughout the trial by three attorneys," not four, which indicated an awareness that Dama was not involved with trial. That means that there is no reduction of hours for us to vacate.

Third, the district court excluded specific post-trial hours. It deemed counsel's "duplication of effort" to be "excessive and unnecessary," noting that "every single post-trial motion and response was reviewed and revised by three different attorneys." Alvarez claims that any post-trial review and revision represents "a reasonable allocation of labor, not unreasonable duplication of effort." He nevertheless acknowledges that Walsh, Castellanos, and Wheeler all had a hand in drafting and editing each major post-trial filing. Alvarez notes that much of the work at issue "would not . . . have been necessary absent the District Court's . . . delay in entering judgment." Be that as it may, the district court did not clearly err with respect to post-trial revisions.

Next, the court deemed the retention of McKnight "illogical," concluding that hiring McKnight to prepare the fee motion "made it unavoidable that [he] would be required to get up to speed on case background and procedural history." Alvarez contends that the district court erred by excluding *all* of the time McKnight spent on the fee motion, "regardless of the fact that someone would have had to do it." Exclusion of all time spent preparing the fee motion would constitute an abuse of

discretion.[32] It appears, however, that the district court excluded the majority—but not all—of McKnight's time. The court used the Army's opposition as a template for computing compensable hours, and that opposition rejected all but 1.70 of McKnight's 19.40 hours. This is a steep reduction, to be sure, but because the court found that Alvarez "expend[ed] more effort than reasonably necessary to establish and defend [his] fee claim," it could "reduce the number of compensable hours accordingly."[33] We cannot say, then, that the district court clearly erred in doing so.

## B.

Alvarez next contends that the district court erred by declining to reimburse various travel-related costs. We review a district court's award of costs for abuse of discretion.[34]

When discussing "reimbursement for travel, hotel, and subsistence," the district court stated that "[t]here is no authority that allows for reimbursement of these costs." The court cited 28 U.S.C. §§ 1821 and 1920, observing that "[n]othing in these statutes provides for the payment of travel expenses to the attorneys in this case."

However, "[i]n Title VII cases, a district court has an additional source of authority for applying attorney's fees and costs, 42 U.S.C. § 2000(e)-5(k)."[35] As Alvarez correctly notes, we have "interpreted the

---

[32] *See Cruz v. Hauck*, 762 F.2d 1230, 1233–34 (5th Cir. 1985) (holding that plaintiffs are "entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation," so a district court may not "completely deny compensation" for these fees).

[33] *Id.* at 1234.

[34] *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010).

[35] *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001).

No. 20-50465

'attorney's fee' allowed by [this provision] to include 'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services,' such as . . . travel costs."[36] It is true that, on remand, a district court may reduce requested costs if it finds them to be unreasonable. But, because the district court here denied such costs outright after it erroneously concluded that no authority permitted their reimbursement, it abused its discretion. We must therefore vacate this portion of the fee order.[37]

## IV.

Alvarez also appeals the district court's second fee order. That order was a text-only docket entry denying as moot Alvarez's first supplemental fee motion. That motion sought additional attorney's fees for the time McKnight spent replying to the Army's opposition to Alvarez's original fee motion.

As we previously mentioned, "[i]t is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation."[38] This includes time spent replying to an opposing party's objections to the original fee motion.[39] Again, if a plaintiff "expend[s] more effort than reasonably necessary to establish and defend their fee claim, the district court may reduce the number of compensable hours accordingly;

---

[36] *Id.* (quoting *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 557 (5th Cir. 1987)).

[37] *See Torres*, 945 F.3d at 352 (observing that a court abuses its discretion when its ruling is based on "an erroneous application of the law").

[38] *Hauck*, 762 F.2d at 1233.

[39] *See id.* at 1234.

it may not, however, completely deny compensation for this reason, and to do so [is] an abuse of discretion."[40]

In denying as moot the first supplemental fee motion, the district court merely stated, "Pursuant to the Court's Order Granting in Part Plaintiff's Motion for Fees, this Motion is now MOOT." It did not further explain the denial. The first fee order did not specifically discuss the time that McKnight spent replying in support of the original fee motion. But, as we noted above, the district court did discuss the Army's "challenge[]" to McKnight's involvement in the preparation of the original fee motion. The district court "agree[d] that the decision to have a fifth attorney is illogical here . . . because having an attorney who had no involvement in the litigation necessarily increased, rather than decreased[,] the efficiency of the preparation of the Motion. This decision made it unavoidable that . . . McKnight would be required to get up to speed on case background and procedural history."

It thus appears that the district court flatly denied all compensation for the time McKnight spent replying to the Army's opposition, and that it did so based on its finding that McKnight's involvement was unnecessary and inefficient. Our precedent reflects that this was error. The district court was permitted to "reduce the number of compensable hours" spent on the reply, but it was not permitted to "completely deny compensation."[41] "[T]o do so was an abuse of discretion."[42] We therefore vacate the second fee order.

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

No. 20-50465

## V.

Finally, Alvarez challenges the district court's third fee order, which granted in part and denied in part his second supplemental motion for attorney's fees. Alvarez contends that this order "represent[s] an abuse of discretion to the extent it adopted the same hourly rates that it set in the first fee order." But as explained above, the district court did not clearly err when calculating the hourly rate for the first fee order. We therefore affirm the district court's third fee order.

\*          \*          \*

### Conclusion

We VACATE the portions of the first fee order that denied (1) fees related to Johnson's testimony and (2) costs for attorney travel and subsistence and we REMAND for the district court to award such costs that it determines to be reasonable. We VACATE the second fee order and REMAND for the district court to award reasonable compensation for the reply in support of the first fee motion. We AFFIRM the third fee order.