**Opinion issued March 24, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-25-00359-CV

————————————

**THE CITY OF HOUSTON, Appellant**

**V.**

**HOLLIS F. HOLMES, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-54734**

---

## MEMORANDUM OPINION

Hollis Holmes sued the City of Houston for negligence following a motor-vehicle accident. The City filed a motion for summary judgment arguing it is immune from suit because the City's employee, a firefighter who was driving the fire truck that collided with Holmes' car, was not in the course and scope of

employment when the accident occurred. The trial court denied the City's motion and this appeal ensued.

We affirm.

## Background

On September 11, 2022, at approximately 11 a.m., Houston firefighter Eugene Schifani drove a Houston Fire Department ("HFD") ladder truck to an H-E-B grocery store in Houston, Texas with three other firefighters on board. Schifani and firefighter Troy Dornak waited in the fire truck with its engine running while the two other firefighters went inside the grocery store to purchase groceries for the fire station's crew to eat during their twenty-four-hour shift. According to Schifani, the fire truck's engine remained running during the forty-five minutes the two firefighters were in the store "just in case we got an emergency call for a ladder truck while on our grocery run."

Holmes pled that as she drove eastbound in the grocery store parking lot, the HFD fire truck collided with her car. She alleged that Schifani was acting in the course and scope of his employment with the City when the collision occurred and "carelessly failed to look ahead and make sure it was safe" to pull out from the truck's parked position. According to Schifani, Holmes' car had stopped in the fire truck's blind spot and as he attempted to pull out the truck from where he parked in

front of the store, "the passenger front tire ring" on the fire truck caught the car's "passenger side back plastic bumper cover and pulled it off."

Holmes sued the City for negligence under the Texas Tort Claims Act[1] and asserted the doctrine of respondeat superior.[2] She sought damages for past and future reasonable medical care and expenses, past and future physical pain and suffering, and past and future mental anguish.[3] The City pled in its answer, among other things, that governmental immunity barred Holmes' claims.

## Summary Judgment Motion

The City filed a traditional motion for summary judgment based on governmental immunity. In support of its motion, the City attached the unsworn declarations of Schifani and Dornak, one of the firefighters who accompanied Schifani to the grocery store,[4] and a business record affidavit proving up ten photos of the accident scene.

In his unsworn declaration, Schifani stated that

- His shift on September 11, 2022 began at 6 a.m.

---

[1]   TEX. CIV. PRAC. & REM. CODE § 101.001, et seq.

[2]   Holmes also sued Schifani but she later dropped her claims against him.

[3]   Holmes' property damage claim was settled and was not part of the underlying litigation.

[4]   Unsworn declarations that comply with section 132.001 of the Civil Practice and Remedies Code constitute competent summary judgment evidence. *Chagoya v. Vilchis*, No. 01-22-00864-CV, 2024 WL 3417049, at *4 (Tex. App.—Houston [1st Dist.] July 16, 2024, no pet.) (mem. op.); *see also* TEX. CIV. PRAC. & REM. CODE § 132.001(c), (d) (enumerating requirements of unsworn declarations).

- That morning, each of the twelve crew members of the firehouse paid $25 for groceries to cover the twenty-four-hour shift. The money was to purchase food for lunch, dinner, breakfast, and snacks during the shift.

- At approximately 11 a.m., he drove ladder truck 64 to an H-E-B store to purchase food with the money that had been collected. Three firefighters, including Dornak, accompanied him.

- He parked the truck parallel to the front of the store.

- Two firefighters went into the store to shop and he and Dornak waited in the truck outside the store "with the engine running," and

- "Because on duty HFD firefighters work twenty-four hours during their shift, we had to be available just in case we got an emergency call for a ladder truck while on our grocery run." They did not receive an emergency call during the grocery trip.

Schifani also provided the details of the accident, which occurred at approximately 11:46 a.m.[5]

Dornak, a senior captain at the fire station, stated in his unsworn declaration that

- He waited with Schifani in the ladder truck while the other two firefighters shopped.

- He confirmed the engine was running while they waited, stating, "Because we work twenty-four hours straight during our shift, we must be prepared at all times to be able to respond to an emergency call for a ladder truck."

- The groceries were purchased "to be prepared at the station for lunch, dinner and breakfast the next day. We have twelve firefighters at Station

---

[5]     Because liability is not contested in the summary judgment motion, we need not go into the details of how the accident occurred.

62 for the shift. Each firefighter chips in $25.00, so we [have] $300.00 to buy groceries for three really substantial meals."

The City argued that Schifani was not acting within the scope of his employment but was, rather, on a "grocery run" when the accident occurred.

In her summary judgment response, Holmes argued that this is not a simple "gone to lunch" case. Rather, Schifani drove the fire truck and ladder crew to the grocery store and stayed with the truck "just in case [they] got an emergency call for a ladder truck." She further argued that Schifani was driving the truck that day because driving the truck "is his job," and he is "assigned to Station 64 . . . driving the Ladder truck."

In addition, she argued that the grocery run "furthered the City's business" because it allowed the firefighters "to eat at the station and be available to respond to emergency calls." Based on Dornak's statement, according to Holmes, the grocery runs "appear[] to be a regular occurrence." Further, sending the ladder crew to the store "allowed them to take a truck that 'tend[s] to receive less emergency calls than other apparatuses,' but can still 'be prepared at all times to be able to respond to an emergency call.'" She pointed to Schifani's statement in his declaration that he waited outside the grocery store with the engine running "just in case we got an emergency call for a ladder truck while on our grocery run."

Finally, she argued that Schifani "was not just another guy going to pick up groceries for himself. Rather, [h]e was driving a City Ladder truck, carrying three

5

other firefighters, to the grocery store, to carry out a task that had been assigned to them for the benefit of Station 64, in a manner that allowed them to keep doing their work." Schifani's "general duties include driving the Ladder truck and his specific duties that day included driving the Ladder truck to HEB." She argued the City had not conclusively established Schifani was on a personal errand when the accident occurred.

In its summary judgment reply, the City argued that "[c]o-workers tasked by other co-workers to buy groceries during the shift and every shift does not make the errand in the scope of employment;" going to purchase groceries in a HFD ladder truck does not turn the errand into a "scope of employment endeavor;" the City does not derive benefit from the grocery run; and the grocery run was not in furtherance of the City's business.

The trial court denied the City's summary judgment motion. This appeal ensued.

## Standard of Review

Subject matter jurisdiction is implicit in a court's power to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). To establish subject matter jurisdiction, a plaintiff must allege facts that demonstrate affirmatively the court's jurisdiction to hear her claims. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "Whether a court has subject matter jurisdiction is a

6

question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Because the existence of subject matter jurisdiction is a question of law, we review the trial court's ruling on the City's motion for summary judgment de novo. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006).[6]

A governmental unit may raise the affirmative defense of governmental immunity and challenge the trial court's jurisdiction "through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). To obtain a traditional summary judgment based on lack of jurisdiction, "a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Town of Shady Shores*, 590 S.W.3d at 551 (citing TEX. R. CIV. P. 166a(c)). The nonmovant "may raise a genuine issue of material fact by producing 'more than a scintilla of evidence establishing the existence of the challenged element.'" *Id.* (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). In our review, "we view the evidence in the light most favorable to the nonmovants by indulging every

---

[6] We also review a trial court's ruling on a summary judgment motion de novo. *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216, at *3 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op.) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)).

reasonable inference and resolving any doubts in their favor." *City of Houston v. Rodriguez*, 704 S.W.3d 462, 470 (Tex. 2024).

## Governmental Immunity

Governmental immunity protects political subdivisions of the state from lawsuits and liability for monetary damages unless their immunity is waived. *See Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332 (Tex. 2022); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) ("Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages.") (citation omitted). As political subdivisions of the State, cities are "immune from suit unless [their] immunity is waived by state law." *City of Austin v. Powell*, 704 S.W.3d 437, 448 (Tex. 2024) (quoting *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022)).

The Texas Tort Claims Act ("TTCA") waives immunity from suit for negligent acts in certain circumstances.[7] *City of Houston v. Gomez*, 716 S.W.3d 161, 165 (Tex. 2025). Relevant to the issues here, the TTCA waives governmental immunity for claims involving the negligent use or operation of a motor-driven

---

[7] The starting point for our analysis is "a presumption against any waiver until the plaintiff establishes otherwise." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023).

vehicle. Section 101.021(1) provides that a governmental unit in the state is liable for:

> (1)  property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B)  the employee would be personally liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021(1).

## Scope of Employment

In its sole issue, the City argues that it retained its governmental immunity from Holmes' TTCA claims because Schifani, the driver of the HFD ladder truck, was not acting in the scope of employment when the accident occurred.

In its summary judgment motion and again in its appellate brief, the City cites eleven "acting within the scope of employment" cases involving governmental entities. We are not persuaded by the number of cases the City cites. The inquiry into whether an act was committed in the course and scope of employment is "unavoidably fact-specific." *Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 627 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd). And none of the cases cited by the City is factually analogous to the present case.

The City relies on *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op.) in support of its argument that Schifani was not in the scope of his employment when the collision with Holmes occurred. *Carrizales* stemmed from an accident involving a City of Houston sewer jet truck and Carrizales' car. *Id.* at *1. When the accident occurred, the truck's driver ("Griffin") was driving the truck back to her place of work after stopping by her home for lunch. *Id.* at *2. Griffin "was alone in the truck when the collision occurred. She explained that if she had been investigating a stoppage or answering a request for service or investigating or inspecting a sewer complaint, someone else would have been in the truck with her because '[i]t takes two people to perform the job.'" *Id.* Carrizales sued the City under the TTCA and the City moved for summary judgment based on governmental immunity. *Id.* Carrizales asserted that there was a genuine issue of material fact as to whether Griffin was acting in the course and scope of her employment "because Griffin stated in her deposition that she 'was on the clock' when the collision occurred but also stated that she was not required to 'clock out' during the day, and she explained that 'even while we are on our break, we are on the clock.'" *Id.* The trial court denied the summary judgment motion.

In reversing the trial court, we held that Griffin's testimony that she was returning to her workplace "alone after lunch when the accident occurred" rebutted

10

the presumption that she was acting in the course and scope of her employment when the accident occurred. *Id.* at \*5. And we relied in part on Griffin's deposition testimony "that if she had been performing her job duties, such as investigating a stoppage, answering a request for service, or investigating or inspecting a sewer complaint, someone else would have been in the truck with her because 'it takes two employees to perform the job.'" *Id.*

*Carrizales* is inapposite; in fact, it lends support to Holmes' position. Whereas Griffin was alone—and thus could not have been actively on duty based on her testimony—when the accident occurred, Schifani's entire four-person ladder crew was in the truck at the grocery store because they remained on duty. While two of the firefighters were shopping, Schifani and Dornak remained in the truck with the engine running in case they were needed for an emergency call. Dornak stated in his declaration that he and Schifani waited in the truck with the engine running because "we must be prepared at all times to be able to respond to an emergency call for a ladder truck." And Schifani stated that the engine was running during the approximately forty-five minutes of grocery shopping because as HFD firefighters, "we had to be available just in case we got an emergency call for a ladder truck while on our grocery run." We thus are not persuaded by *Carrizales*.

The City also relies on *Cameron International Corp. v. Martinez*, 662 S.W.3d 373 (Tex. 2022), a non-governmental entity case. In *Cameron*, a Cameron employee ("Mueller") traveled to another town after work "on his own time to have dinner and to restock his personal groceries and fuel." *Id.* at 377. He had traveled to the town at the invitation of his supervisor, who asked him to "remain on voluntary standby for potential work . . . the next day." *Id.* at 375. After leaving the gas station, Mueller was involved in a car accident that resulted in two deaths. *Id.* The survivors and decedents' estates sued Cameron, alleging Mueller was acting in the scope of employment when the accident occurred. *Id.* at 376. The trial court granted Cameron's summary judgment motion in which it argued Mueller was not its employee or acting within the scope of employment when the accident occurred. *Id.* The court of appeals reversed, holding the summary judgment evidence "raised fact issues" as to whether Mueller was acting in the scope of his employment when the collision occurred and provided some evidence in support of the plaintiffs' claim "that Mueller's purchases of food and water during his trip constituted 'a necessary service in furtherance of Cameron's business[.]'" *Id.* The Supreme Court reversed the court of appeals, stating:

> Nearly every task that supports a worker's personal needs, including travel to and from work, indirectly benefits the employer. By traveling to the workplace, a worker makes his services available, "and in that sense he furthers the affairs or business of his employer by making the journey." *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292 (Tex. 1965). Not every journey, however, falls within the course and scope

12

of an employment relationship. *Id.* To except from the general rule Mueller's travel to obtain personal groceries and fuel at his choice— and not at Cameron's direction—would turn nearly any personal grocery errand into a special mission on an employer's behalf, a concept that we rejected in *Painter*.[8] *See* 561 S.W.3d at 138 (explaining that an employee's decision to "conduct a personal errand" while otherwise engaged in his employer's business does not give rise to vicarious liability for travel in connection with that errand). Workers often travel for personal necessities during the workday or leave for a meal before returning to work, but these activities do not arise from the business of the employer. Rather, they are daily tasks in which workers and nonworkers alike engage, carrying the same attendant risks.

*Id.* at 377 (footnote added). The Supreme Court held "a personal trip for groceries does not fall within the [] exception to the general rule that an employer is not vicariously liable for an employee's negligent acts while the employee travels to and from work." *Id.* at 379.

The fact that the employee in *Cameron* made a trip to purchase groceries before the accident occurred does not render *Cameron* analogous to the present case. Unlike the employee in *Cameron*, Schifani was not on a personal trip for groceries. Viewing the evidence in the light most favorable to Holmes by indulging every reasonable inference and resolving any doubts in her favor, the evidence reflects that Schifani was actively on duty while at the grocery store. The engine of the fire truck was running in case he and his cohorts were called to an emergency scene. Dornak stated that "[b]ecause we work twenty-four hours straight during

---

[8]     *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125 (Tex. 2018).

13

our shift, we must be prepared at all times to be able to respond to an emergency call for a ladder truck." And Schifani was not simply buying personal groceries. He and the other three firefighters were buying groceries to enable the twelve-person crew to eat while on duty during their twenty-four-hour shift.[9] That is, the groceries were purchased by the entire crew to enable them to work for the entire shift. *Mueller* is not persuasive.

Holmes relies on our decision in *City of Houston v. Lal*, 605 S.W.3d 645 (Tex. App.—Houston [1st Dist.] 2020, no pet), which stemmed from a Houston police officer's collision while driving a city-owned police car. *Id.* at 647. The officer ("Ryans") was off duty the day of the accident but remained on call to respond to human-trafficking cases. *Id.* Immediately before the accident, Ryans, who was driving, looked at his city-owned cell phone to see who was calling him. *Id.* The distraction caused the accident. *Id.* The accident victim sued the City of Houston for negligence, alleging Ryans was acting within the scope of his employment when the accident occurred. *Id.* The City filed a plea to the jurisdiction, arguing Ryans was not acting within the scope of his employment when the collision occurred. *Id.* at 647–48. The trial court denied the plea to the jurisdiction. *Id.* at 648.

---

[9] Schifani stated in his declaration that the groceries were "all that the Station 64 crews would need during our twenty-four-hour shift. The crews agree and each member provides $25.00 to the kitty so that we can buy groceries to cover our two days/twenty-four-hour shift which includes lunch, dinner, breakfast and snacks."

The City argued that Ryans "was not on duty and his on-call status, standing alone, did not render his conduct within the scope of his employment." *Id.* at 649. The City argued that "looking at a ringing phone" did not render Ryans' conduct within the scope of employment, but this Court disagreed, noting that "Ryans's phone was issued by the city, and Ryans was on call. From these undisputed facts, a factfinder could reasonably infer that Ryans was obligated in his capacity as a peace officer employed by the city to answer incoming calls on this phone so that he could be returned to duty if requested by the vice division." *Id.* We observed that even if Ryans was not on duty when the accident occurred, as the City asserted, that fact was not dispositive. "The question is whether there is a connection between Ryans's job duties and his allegedly tortious conduct." *Id.* at 650. Affirming the trial court, we held that the City failed to prove conclusively that Ryans was not acting within the scope of his employment at the time of the accident, and therefore, the trial court did not err in denying the City's jurisdictional plea. *Id.* at 649.

Holmes also relies on our sister court's holding in *City of Houston v. Mejia*, 606 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2020, pet. denied), another case involving a police officer ("Gallagher") involved in a traffic accident while driving a city-owned vehicle. In *Mejia*, the facts establish that Gallagher finished her shift at 4 p.m. on the day of the accident. *Id.* at 906. Gallagher's husband, a Houston

15

Police Department ("HPD") lieutenant, asked her to pick up his city-issued vehicle from the city garage and to drive it to their home so he would have his car available at the start of his next shift. *Id.* After picking up the police car and on her regular commute home, Gallagher was involved in an accident with the plaintiffs. *Id.* at 904. Gallagher testified that at the time of the accident, she had no official duties and, other than still being on call, was not being paid for her time. *Id.* The City of Houston moved for summary judgment asserting it was entitled to immunity because Gallagher was not in the course and scope of her employment when the accident occurred. *Id.* The trial court denied the City's summary judgment motion. *Id.*

The City argued that Gallagher was not acting in the scope of her job as a police officer but was, rather, "just another commuter on a Friday evening heading home to enjoy time off on the weekend." *Id.* at 906. The plaintiffs responded that Gallagher was driving a city-owned vehicle, carrying out instructions issued by an HPD officer who outranked her, and that HPD "would derive benefit from her actions." *Id.* The appellate court agreed with the plaintiffs, observing that Gallagher's affidavit reflected that "her husband (a superior officer employed by Gallagher's employer) asked her to pick up his City-issued vehicle from the City garage so her superior officer would have the vehicle available at the beginning of

16

his shift (a benefit to Gallagher's employer, HPD)." *Id.* Therefore, Gallagher was not a mere commuter on the way home from work. *Id.*

We find both *Lal* and *Mejia* to be instructive.[10] Viewing the evidence in the light most favorable to Holmes, and indulging every reasonable inference and resolving any doubts in her favor," the evidence reflects that Schifani was not acting under the guise of a typical grocery shopper, given that he was required to remain prepared, with the engine running, in case he was called to an emergency during the grocery run. The grocery trip was not made to purchase Schifani's own personal groceries, or even just for those four firefighters with him at the store, but for the entire on-duty crew. Given that he was required to remain ready and able to cover any emergency that arose during the grocery run, there is at least a fact question as to whether he was acting in the course and scope of his employment when the fire truck struck Holmes' car.

The City argues that an employee is generally not in the scope of his employment while driving to or from work, even if traveling in the company vehicle and if the employee is "on call" twenty-four hours a day. The primary case it cites, *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex. 2007), involves an employee who drove a company truck at approximately 3 a.m. to a

---

[10] The City does not address *City of Houston v. Lal*, 605 S.W.3d 645 (Tex. App.—Houston [1st Dist.] 2020, no pet) or *City of Houston v. Mejia*, 606 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

convenience store to purchase cigarettes, was supposed to be available via pager twenty-four hours a day, and caused an accident on his way back home from the store. *Id.* at 757. That is not tantamount to the present situation in which the grocery trip was made during Schifani's work shift to enable the fire crew to eat during their twenty-four-hour shift. Being "on call" twenty-four hours a day is not the same as being on a "twenty-four-hour" shift.

The City also argues "it is a well-established principle that merely because an employee is on-duty, or on-call twenty-four hours a day, does not mean that the person is always acting within the scope of his employment." *City of Laredo v. Saenz*, No. 04-05-00188-CV, 2006 WL 286006, at *3 (Tex. App.—San Antonio Feb. 8, 2006, no pet.) (mem. op.). In *Saenz*, the city argued that the officer who was involved in an accident with the plaintiff was off duty when the accident occurred, and the plaintiff argued that the officer's "status as a police officer equates to his being 'on-duty' twenty-four hours a day." *Id.* Here again, that is not the present case. It is undisputed that the accident with Holmes happened during a twenty-four-hour work shift, and that the engine was running in case Schifani was called to an emergency during the forty-five-minute grocery run. From these undisputed facts, a factfinder could reasonably infer that Schifani was on duty when the accident occurred and acting for HFD's benefit. *See Lal*, 605 S.W.3d at 649 (holding officer was in scope of employment when expected to answer

18

incoming calls so he could be returned to duty if needed); *Mejia*, 606 S.W.3d at 906 (holding officer was on duty because police department "would derive benefit from her actions"). At a minimum, there was a fact issue on this point precluding summary judgment.

Viewing the evidence in the light most favorable to Holmes, and indulging every reasonable inference and resolving any doubts in her favor, as we must, we hold the trial court properly denied the City's motion for summary judgment. We overrule the City's sole issue.

## Conclusion

We affirm the trial court's denial of the City of Houston's motion for summary judgment.


Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.